**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                                    No. 05-4304

DONALD DAVENPORT,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CR-04-453-WDQ)

Argued: January 31, 2006

Decided: April 21, 2006

Before WILKINS, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

---

Vacated and remanded by published opinion. Chief Judge Wilkins
wrote the opinion, in which Judge Michael and Judge Traxler joined.

---

### COUNSEL

**ARGUED:** Sean Paul Vitrano, ZUCKERMAN SPAEDER, L.L.P.,
Baltimore, Maryland, for Appellant. Andrew George Warrens Nor-
man, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Gregg L. Bernstein, ZUCKERMAN SPAEDER, L.L.P., Bal-
timore, Maryland, for Appellant. Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Donald Davenport appeals, as a violation of the Ex Post Facto Clause and as unreasonable, the ten-year sentence imposed by the district court following Davenport's guilty plea to fraudulent use of an access device, *see* 18 U.S.C.A. § 1029(a)(5) (West 2000). He also challenges, as plainly erroneous, the restitution order entered by the district court. For the reasons set forth below, we vacate the sentence and restitution order and remand for further proceedings.

I.

On May 17, 2004, Norma Brown reported to police that her wallet had been stolen by a man who jostled her as she boarded a shuttle bus at Baltimore-Washington International Airport. Shortly thereafter, one of Brown's credit cards was used at a store in the airport. Investigation of this purchase led to the arrest of Davenport, Anthony Dillon, and two others. Davenport subsequently pleaded guilty pursuant to a plea agreement.

The Probation Office filed a presentence report (PSR) that determined that Davenport's base offense level was 6, *see United States Sentencing Guidelines Manual* § 2B1.1(a)(2) (2004). The PSR then recommended 2-level enhancements for the amount of loss, *see* U.S.S.G. § 2B1.1(b)(1)(B), the number of victims, *see* U.S.S.G. § 2B1.1(b)(2)(A), theft from another person, *see* U.S.S.G. § 2B1.1(b)(3), and use of sophisticated means, *see* U.S.S.G. § 2B1.1(b)(9)(C). After subtracting two levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), the PSR recommended an adjusted offense level of 12. Davenport had 26 criminal history points, placing him in Criminal History Category VI. The resulting advisory guideline range was 30-37 months.

In a letter submitted to the district court prior to sentencing, counsel for Davenport urged the district court to impose a sentence of only 24 months, arguing that such a sentence was justified by Davenport's cooperation with the Government and the factors set forth in 18

U.S.C.A. § 3553(a) (West 2000 & Supp. 2005). Counsel noted Davenport's "sincere remorse and shame for his conduct, which to a large extent appears to have been motivated by pressure from Mr. Davenport's childhood friend and accomplice, Anthony Dillon." J.A. 69. The Government contested this assertion at sentencing, arguing that

> Mr. Davenport was heading . . . a nationwide pickpocket ring that would travel from event to event to event. Whether it was [the] Preakness [Stakes, the event Brown had attended,] or the Super Bowl or whathaveyou and whether it be in the airports or at the events themselves, they would take pocketbooks, they would take wallets. They had all these devices to make I.D.s . . . . I just finished a two-month trial of I.D. theft and I can tell you it essentially ruins people's lives. It certainly ruins their credit . . . .
>
> . . . .
>
> Mr. Davenport was adamant in coaching Mr. Dillon . . . about not cooperating and don't tell the Government this, don't tell them that. As a matter of fact, . . . they had to move Mr. Davenport to a different facility because of that, separated from Mr. Dillon. He is in fact the leader. We've had proffers from at least three of the four defendants who have told us the entire story. . . . Mr. Davenport was in fact the ring leader and the organizer of this group. As far as . . . the nature and the circumstances of the crime, although to label it pickpocketing seems minor, this was an extensive ring that involved fences, that involved vans that were set up at these events that would take the I.D.s and immediately go in and set up new I.D.s and false names and false identifications for other individuals as well.

*Id.* at 38-39. The Government concluded by recommending a sentence within the advisory guideline range, as was its obligation under the plea agreement.

The district court sentenced Davenport to ten years imprisonment, which it incorrectly believed to be the statutory maximum.[1] In imposing this sentence, the district court made the following comments:

---

[1]The PSR incorrectly stated that the statutory maximum for Davenport's offense was ten years. In fact, the statutory maximum is 15 years. *See* 18 U.S.C.A. § 1029(c)(1)(A)(ii) (West Supp. 2005).

[T]he presentence report shows that you have stolen a variety of things in a variety of places and you've also received a variety of breaks from a variety of judges. Listening to you this morning, I hear a less than vivid insight into your conduct and the reasons for that conduct. Understanding the guidelines to be advisory only now, this is a case where had the guidelines been binding, I would have departed upward above the guidelines. Understanding that the purposes of sentencing in this case which I view to be most important are to reflect the seriousness of the offense, I think a sentence that your lawyers have recommended not only would not show the seriousness of the offense, it would certainly not promote respect for the law. I think the characterization of you as essentially engaged in a national roving band of thieves is an appropriate one. Accordingly, I [sentence you] to serve a term of imprisonment of ten years . . . . The purpose of that sentence is . . . to provide deterren[ce]. I do believe that . . . you received a variety of breaks from a variety of judges in your past. None of that has had any therapeutic effect on you and as I listened . . . this morning to your self-assessment, I don't hear from you any awareness of the basis for your conduct or any serious commitment to changing that conduct.

*Id.* at 48-49. The district court also required Davenport to pay restitution.

## II.

## A.

Davenport first challenges his sentence as a violation of the Ex Post Facto Clause. *See* U.S. Const. art. I, § 9, cl. 3; *see also id.* art. I, § 10, cl. 1 (prohibiting states from enacting ex post facto laws). This argument is without merit.

The Ex Post Facto Clause prohibits, *inter alia*, the enactment of "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28

(1981) (internal quotation marks omitted). Accordingly, a law violates the Ex Post Facto Clause when it is retrospective— *i.e.*, when it applies to events predating its enactment—and it disadvantages those to whom it applies. *See Lynce v. Mathis*, 519 U.S. 433, 441 (1997). The central concern of the ex post facto prohibition is "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30. The clause seeks to ensure "that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed," and it guards against "arbitrary and potentially vindictive legislation." *Id.* at 28-29.

Ex Post Facto challenges to the retroactive application of *Booker* have been universally rejected by the federal courts. *See, e.g.*, *United States v. Austin*, 432 F.3d 598, 599-600 (5th Cir. 2005) (per curiam); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005), *petition for cert. filed*, No. 05-9499 (U.S. Mar. 1, 2006); *United States v. Perez-Ruiz*, 421 F.3d 11, 15 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 1092 (2006); *United States v. Dupas*, 419 F.3d 916, 919-21 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1484 (2006); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005). We, likewise, reject Davenport's claim. When he committed the crime, Davenport was on notice that the maximum statutory penalty was 15 years; this is all that is required to satisfy the concerns of fair notice embodied by the Ex Post Facto Clause. *See Austin*, 432 F.3d at 599-600.

## B.

Davenport next challenges his ten-year sentence as unreasonable. *See United States v. Booker*, 543 U.S. 220, 260-62 (2005); *United States v. Green*, 436 F.3d 449, 456-57 (4th Cir. 2006). For the reasons set forth below, we vacate and remand for resentencing.

## 1.

This court has previously described the necessary procedure for imposing sentence under the now-advisory sentencing guidelines:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range.

Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (citations, internal quotation marks, & alterations omitted); *see United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("[A] district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." (internal quotation marks omitted)).

We review the sentence for reasonableness, considering "the extent to which the sentence . . . comports with the various, and sometimes competing, goals of § 3553(a)." *Moreland*, 437 F.3d at 433. Underlying legal and factual determinations are reviewed, respectively, de novo and for clear error. *See id.* When we review a sentence outside the advisory guideline range—whether as a product of a departure or a variance—we consider both whether the district court acted reasonably with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the guideline range. *See*

*id.* at 433-34 (variance sentence); *United States v. Hairston*, 96 F.3d 102, 106 (4th Cir. 1996) (departure sentence).

2.

Davenport asserts that we must vacate his sentence because he received no notice that the district court was contemplating a sentence above the advisory guideline range. We agree that Davenport was entitled to notice. Rule 32 of the Federal Rules of Criminal Procedure contains various procedural requirements intended to ensure the accuracy of the information used at sentencing. *See United States v. Nappi*, 243 F.3d 758, 763 & n.4 (3d Cir. 2001); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948) (holding that sentence based on materially false information violates the Due Process Clause). One of these requirements is found in Rule 32(h), which requires the district court to provide "reasonable notice" of an intent to depart on a ground not previously identified by the PSR or one of the parties and to specify the ground of departure. Fed. R. Crim. P. 32(h). *See generally Burns v. United States*, 501 U.S. 129, 135 (1991) (holding, prior to adoption of Rule 32(h), that the district court must notify the parties before departing "on its own initiative and contrary to the expectations of both the defendant and the Government"). The need for such notice is as clear now as before *Booker*. There is "essentially no limit on the number of potential factors that may warrant a departure" or a variance, and neither the defendant nor the Government "is in a position to guess when or on what grounds a district court might depart" or vary from the guidelines. *Burns*, 501 U.S. at 136-37. We therefore conclude that notice of an intent to depart or vary from the guidelines remains a critical part of sentencing post-*Booker*. *See United States v. Hawk Wing*, 433 F.3d 622, 626-27 (8th Cir. 2006).

It is less clear to us that the failure to provide notice prejudiced Davenport. It is true that the plea agreement included the Government's pledge to "recommend a sentence within the guideline range," J.A. 30, and that during the plea hearing the district court informed Davenport that it was "not likely" to impose a sentence outside the guideline range, *id.* at 16. However, Davenport's presentencing letter to the district court specifically addressed the application of § 3553(a) to the facts of the case, indicating that Davenport was amply prepared to comment on any identified basis for departure or variance, as

indeed he did at sentencing. Ultimately, we need not decide whether the notice error was harmless because Davenport is entitled to vacatur of his sentence on the independent basis that the sentence imposed was unreasonable.

3.

The district court reasonably concluded that a sentence above the advisory guideline range was warranted. Davenport was assessed 26 criminal history points, double the number needed to place him in the highest criminal history category. *Cf.* U.S.S.G. § 4A1.3(a)(1) (allowing an upward departure when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history"). During proffer sessions, Davenport acknowledged that he was involved with seven other individuals in a group that traveled to sporting events for the purpose of stealing and using credit cards, indicating (consistent with the Government's assertions) that Davenport's culpability was greater than he admitted pursuant to the plea agreement. Additionally, the district court appropriately identified deterrence as one of the factors relevant to sentencing, *see* 18 U.S.C.A. § 3553(a)(2)(B), and correctly reasoned that a sentence above the advisory guideline range was necessary to reflect the seriousness of the offense and to promote respect for the law, *see id.* § 3553(a)(2)(A). All of these considerations support the decision of the district court to impose a sentence above the advisory guideline range.

We conclude, however, that the length of the sentence was unreasonable.[2] The sentence imposed by the district court—120 months imprisonment—is more than three times the top of the advisory guideline range. So great a divergence requires "compelling . . . reasons," *Moreland*, 437 F.3d at 434, that simply do not appear on the present record. Absent the Government's assertion that Davenport was the ringleader of a nationwide pickpocketing ring—which was made without supporting evidence and disputed by Davenport—the

---

[2]The district court also did not consider departing from the guideline range before imposing a variance sentence, as *Moreland* requires. We do not fault the district court for this, however, because *Moreland* had not been decided when the court sentenced Davenport.

district court knew only that Davenport (a) had been involved in pick-pocketing and credit card theft in Baltimore during the weekend of May 14-17, 2004, (b) had identified seven other individuals with whom he had been involved in similar activities, and (c) possessed a substantial history of similar conduct.[3] These factors simply do not justify a sentence so far above the top of the advisory guideline range. Additionally, the explanation provided by the district court was lacking in that the court "did not explain how [the] variance sentence better served the competing interests of § 3553(a) than [a] guidelines sentence would." *United States v. Hampton*, 2006 WL 724811, at *3 (4th Cir. Mar. 23, 2006).

We therefore vacate the sentence imposed by the district court and remand for resentencing. On remand, the district court should first consider an upward departure pursuant to the guidelines, and should impose a variance beyond any such departure only to the extent necessary to satisfy the statutory mandate of 18 U.S.C.A. § 3553(a). Moreover, to the extent the district court intends to rely on the Government's assertions regarding the scope of Davenport's criminal activities and his leadership role in the enterprise, the parties should be given an opportunity to present evidence to the court if the facts are disputed. *See* U.S.S.G. § 6A1.3(a), p.s. ("When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor."); *United States v. Cropp*, 127 F.3d 354, 362 (4th Cir. 1997) (recognizing "Due Process right to present evidence relevant to sentencing").

III.

We next consider Davenport's challenge to the restitution order entered by the district court. Prior to sentencing, the Government submitted a list of victims for purposes of restitution. The list included five financial institutions that suffered losses from fraudulent charges on stolen credit cards. The list also included four individuals who alleged losses arising from the theft of personal possessions. The total

---

[3]The PSR did not recommend an increase in Davenport's offense level for being an organizer or leader of criminal activity. *See* U.S.S.G. § 3B1.1.

loss reported was $8,738.76. The PSR contained no findings concerning restitution; it did note, however, that Davenport had no reported assets and thus could not pay a fine. At sentencing, the district court ordered Davenport to make restitution in the full amount set forth on the Government's list, but made no findings regarding restitution.

Although the Mandatory Victims Restitution Act of 1996 (MVRA), *see* 18 U.S.C.A. § 3663A(a)(1), (c)(1)(A)(ii) (West 2000 & Supp. 2005), required the district court to order restitution, Davenport maintains that the court exceeded its authority under the MVRA by ordering restitution not statutorily authorized. *See United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) (holding that restitution is proper only when it is statutorily authorized). Because Davenport failed to object to the order at sentencing, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To establish plain error, Davenport must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if Davenport makes this three-part showing, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (second alteration in original). The Government concedes that the restitution order is plainly erroneous, and we agree.

We first conclude that the district court failed to make factual findings sufficient to support the restitution order. The MVRA requires the district court to consider and make findings with respect to "the financial resources and other assets of the defendant," his "projected earnings and other income," and his "financial obligations." 18 U.S.C.A. § 3664(f)(2) (West 2000); *see* 18 U.S.C.A. § 3663A(d) (West 2000) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664."). The district court was also required to "make a factual finding keying the statutory factors to the type and manner of restitution ordered; it must find that the manner of restitution ordered is feasible." *United States v. Dawkins*, 202 F.3d 711, 716 (4th Cir. 2000). Except perhaps for Davenport's lack of resources (mentioned in the PSR), the district court made none of the required findings. The obligation to make these

findings was clearly established at the time of Davenport's sentencing, and thus the district court plainly erred in failing to make them.

Next, we conclude that the district court plainly erred in ordering restitution to individuals who are not victims of the offense of conviction. The MVRA allows restitution only for (1) those who are "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" and (2) "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C.A. § 3663A(a)(2) (West 2000). Davenport pleaded guilty to fraudulent use of an access device, in violation of 18 U.S.C.A. § 1029(a)(5). The elements of this offense are: (1) an intent to defraud, (2) effecting transactions with one or more access devices issued to another person, (3) to receive payment(s) or thing(s) of value, (4) with a total value of $1,000 or more in a one-year period. *See* 18 U.S.C.A. § 1029(a)(5). Because Davenport's offense does not "involve[ ] as an element" a scheme, conspiracy, or pattern, the only question is whether the victims identified by the Government were "directly and proximately harmed" by the offense of conviction.

A person is directly harmed, for purposes of the MVRA, when the harm results "from conduct underlying an element of the offense of conviction." *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996) (construing identical language of the Victim and Witness Protection Act of 1982 (VWPA)).[4] Under this definition, only the credit card company or companies liable for the fraudulent charges made on

---

[4]*Blake* addressed application of a prior version of the VWPA, which defined a victim only as one "directly harmed" by the offense of conviction. Subsequent to *Blake*, the VWPA was amended to define "victim" as one "directly and proximately harmed" by the offense of conviction. 18 U.S.C.A. § 3663(a)(2) (West 2000); *see id.* Hist. & Statutory Notes. The MVRA, which was enacted at about the time of the *Blake* decision, has always included those who suffer proximate harm in the definition of victim. Because the addition of the conjunctive phrase "and proximately" does not broaden the definition of "victim," *see United States v. Thomas*, 315 F.3d 190, 196 (3d Cir. 2002) (noting that use of the conjunctive limits the reach of a statute), *Blake* is still controlling.

May 17 were directly harmed by the offense conduct. *See id.* at 506-07 & n.5 (holding that the conduct forming the offense of fraudulent use of unauthorized access devices does not include the theft of the access devices). Norma Brown and the other individuals and businesses to whom restitution was awarded thus were not directly and proximately harmed by the conduct underlying the offense of conviction and are thus not entitled to restitution under the MVRA. Indeed, based on the record currently before us, it appears that Davenport is liable, *at most*, for $58.85—the amount charged to Brown's credit card. Therefore, while we do not preclude the possibility that the district court could make factual findings supporting an award of the full amount of restitution to all of the identified victims, on the present record the award is plainly erroneous. We note, as we did in *Blake*, that this result "represents poor sentencing policy," *id.* at 506, that can be corrected in the future only through congressional action or through a plea agreement that requires a defendant to make restitution "to persons other than the victim of the offense," 18 U.S.C.A. § 3663A(a)(3) (West 2000).

We further conclude that the erroneous restitution order affected Davenport's substantial rights, at the very least by requiring him to pay substantially more restitution than allowed by statute. *See United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (holding that plainly erroneous restitution order affected the defendant's substantial rights when the restitution amount exceeded statutory limits). And, we believe that refusal to notice the error in a restitution order that exceeds the amount permitted by statute would seriously affect the fairness, integrity or public reputation of judicial proceedings. We therefore exercise our discretion to notice the error.

IV.

For the reasons set forth above, we vacate Davenport's sentence and the restitution order and remand for further proceedings.

*VACATED AND REMANDED*