**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4343

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PATRICK O'NEIL GILL,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Senior District Judge. (5:05-cr-00055-BR)

Argued: March 13, 2007                    Decided: May 23, 2007

Before WILKINSON and KING, Circuit Judges, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joseph Bart Gilbert, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Devon L. Donahue, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Christine Witcover Dean, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Patrick O'Neil Gill appeals from his sentence of 271 months' imprisonment, imposed as a result of his convictions in the Eastern District of North Carolina for interference with commerce by robbery, in contravention of 18 U.S.C. § 1951, and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Gill first contends that the sentencing court erred in two of the upward departures it applied in imposing his sentence, one for an uncharged attempted murder and the other for unusually heinous and cruel conduct. Gill also maintains that his sentence should be vacated because it is procedurally unreasonable. As explained below, we reject each of the challenges to Gill's sentence and affirm.


I.

On June 3, 2004, Patrick Gill entered a Community Mart convenience store in Henderson, North Carolina. Abdalrahman Alsad, the store's owner, was working at the cash register. Gill strode to the store's checkout counter and, without uttering a word, shot Alsad in the forehead at point-blank range. As Alsad slumped to the floor, Gill went behind the counter, took some money from the register, and then walked out of the building.

The bullet from Gill's .25 caliber handgun entered the right frontal region of Alsad's brain and lodged in his posterior fossa,

3

near the back of his head.  Alsad survived, but he was severely injured.  He spent more than a month in the University of North Carolina Hospital, and suffers from permanent brain damage, major speech impediments, and impaired vision.  He also lost the use of his left arm and was rendered nearly unable to walk.  Due to these injuries, Alsad was forced to sell the Community Mart and can no longer support his wife and children.

On July 27, 2005, a grand jury in North Carolina's eastern district returned a three-count Superseding Indictment that charged Gill with (1) interference with commerce by robbery, in contravention of 18 U.S.C. § 1951 ("Count I"); (2) using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count II"); and (3) being a felon in possession of ammunition, in contravention of 18 U.S.C. § 922(g)(1) ("Count III").  On September 26, 2005, Gill pleaded guilty to Counts I and II of the Superseding Indictment, and Count III was dismissed on motion of the prosecution.

On December 8, 2005, the probation officer submitted her Presentence Investigation Report (the "PSR") regarding Gill's pending sentence.  The PSR advised that, under the United States Sentencing Guidelines (the "guidelines"), Gill had an offense level of 23 and a criminal history category of II.[1]  Gill's resulting

---

[1] The 2005 version of the guidelines was used in connection with Gill's sentencing, and all citations herein to the guidelines refer to that version.

guidelines range was 51 to 63 months on Count I and 120 months (the statutory minimum) on Count II, for an overall range of 171 to 193 months' imprisonment. The PSR also identified a number of possible grounds for upward departures, including a prior murder conviction that had not been counted toward Gill's criminal history category because it was more than fifteen years old; Alsad's severe physical injuries; the possibility that Gill's conduct in shooting Alsad constituted attempted murder, even though it had not been charged as such;[2] and Gill's brutality in shooting Alsad with no warning or opportunity to satisfy a demand for money. On December 16, 2005, the prosecution moved for upward departures on each of these grounds, and on December 30, 2005, Gill filed a memorandum opposing the prosecution's motion.

On April 3, 2006, the district court conducted Gill's sentencing hearing. The court adopted the PSR's findings of fact and its determination of Gill's offense level, criminal history category, and resulting guidelines range, all without objection from Gill. The court then advised the parties that it had considered their various presentence filings and offered an opportunity to further argue their respective positions. In response, the prosecution presented the testimony of Alsad's ex-

---

[2]Attempted murder is a federal offense in only a few limited circumstances, none of which was presented by Gill's shooting of Alsad. Thus, Gill apparently could not have been charged with attempted murder in federal court as a result of these events.

wife, as well as statements from two of his children; Gill made a statement on his own behalf; and the parties reiterated the views they had presented in their memoranda on the upward departure motion, with Gill focusing especially on his age (fifty-one) and poor health. In addition, Gill offered a letter from a counselor indicating that he was regularly attending therapy sessions and had repeatedly expressed his remorse. Gill's lawyer handed this letter to the judge, who read it before proceeding further.

After hearing the parties' respective positions, the sentencing court announced several upward departures. First, because of Gill's prior conviction for murder, the court departed upward from criminal history category II to category III. Next, the court concluded that Gill's conduct in shooting Alsad constituted attempted murder, and thus, pursuant to guidelines section 5K2.21, departed upward to an offense level of 31 — the level that would have applied had Gill been sentenced under the attempted-murder guideline (guidelines section 2A2.1).[3] Finally, the court departed upward by two additional offense levels, pursuant to guidelines section 5K2.8, because Gill's actions — specifically, shooting Alsad without giving him an opportunity to

_____

[3]Pursuant to guidelines section 2A2.1, the base offense level for attempted murder is 27. If an attempted murder resulted in permanent, life-threatening injuries, a four-level enhancement is triggered, resulting in an offense level of 31. See U.S.S.G. § 2A2.1(b)(1).

comply with a robbery demand — constituted extreme conduct. These departures produced an offense level of 33, which the sentencing court then reduced by 3 levels because of Gill's acceptance of responsibility in pleading guilty.

Gill's resulting offense level of 30 and criminal history category of III produced a guidelines range of 121 to 151 months on Count I. The sentencing court's upward departures did not affect Gill's advisory guidelines sentence on Count II, which remained 120 months. The court sentenced Gill to the top of the guidelines range — 151 months — on Count I and to the guidelines sentence of 120 months on Count II. These sentences were to be served consecutively, for a total of 271 months' imprisonment.

In explaining its sentencing rulings, the court reasoned that "[a] sentence at the upper end of the guideline range will insure that the defendant does not engage in future criminal conduct." J.A. 81-82.[4] The court further asserted that it had considered each intervening offense level and found that an offense level of 30 was appropriate, and that Gill's sentence "adequately accounts for the severity of the offense" as well as "the defendant's past criminal record." Id. at 82. Additionally, on April 11, 2006, the court filed a written Statement of Reasons for Gill's sentence. In this Statement of Reasons, the court expressly identified four of

_____

[4]Citations to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.

the sentencing goals spelled out in 18 U.S.C. § 3553(a) as grounds for the sentence it had imposed: (1) to account for the nature and circumstances of the offense and the history and characteristics of the defendant, see 18 U.S.C. § 3553(a)(1); (2) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, see id. § 3553(a)(2)(A); (3) to afford adequate deterrence to criminal conduct, see id. § 3553(a)(2)(B); and (4) to protect the public from further crimes of the defendant, see id. § 3553(a)(2)(C).

Gill has timely appealed his sentence and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's sentence, including departures, for reasonableness, considering the extent to which the sentence comports with the goals of 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. 220, 264 (2005); United States v. Davenport, 445 F.3d 366, 370 (4th Cir. 2006); United States v. Dalton, 477 F.3d 195, 197 (4th Cir. 2007) ("We review the court's departure for reasonableness."). The legal determinations underlying a sentence are reviewed de novo. See Davenport, 445 F.3d at 370. Findings of fact made by a district court in sentencing proceedings are reviewed on appeal for clear error. See id.

III.

A.

1.

Gill first challenges the sentencing court's upward departure to the offense level for attempted murder, pursuant to guidelines section 5K2.21. Section 5K2.21 addresses conduct that relates to the offense of conviction and either was not charged (for whatever reason) or underlay a charge dismissed as the result of a plea agreement. If such conduct exists and did not enter into the determination of the defendant's guidelines range, section 5K2.21 approves a departure to the offense level applicable to the uncharged conduct. The purpose of this departure provision is to reflect the true seriousness of a defendant's offense in situations where the charges against him fail to do so.

Gill asserts that the district court's departure under section 5K2.21 was improper, but the reasons for his position are unpersuasive. For one, he maintains that a departure to the offense level for attempted murder was erroneous because no attempted-murder charge was dismissed in his case — rather, the only charge dismissed was Count III, which alleged he was a felon in possession of ammunition. Section 5K2.21, however, expressly covers not only conduct underlying a charge that was dismissed, but any conduct that could have been charged but was not. The fact that Gill was never charged with attempted murder thus did not

9

prevent the court from sentencing him under the attempted-murder guideline, pursuant to section 5K2.21.

Gill also contends that the charges to which he pleaded guilty adequately reflect the seriousness of his offense, and that a departure for uncharged conduct was thus unwarranted. Specifically, he asserts that his conduct consisted of robbing a convenience store (reflected in Count I, interference with commerce by robbery) and discharging a firearm while doing so (reflected in Count II, using a firearm in furtherance of a crime of violence). That forgiving characterization, however, does not begin to express the seriousness of Gill's offense, for he did not simply discharge a firearm while robbing a convenience store. Rather, he discharged the firearm into the head of the store's owner at point-blank range, an act that he could only have expected would lead to the victim's death. It was thus reasonable for the sentencing court to find that Gill's despicable actions constituted an attempted murder on which he was not charged, and that his sentence would not reflect the seriousness of his offense if it failed to account for that aspect of his conduct.

2.

Gill next contends that the sentencing court acted unreasonably in applying the guidelines' departure provision for extreme conduct. Section 5K2.8, the provision invoked by the court, sanctions an upward departure for conduct that is "unusually

10

heinous, cruel, brutal, or degrading to the victim." It goes on to specify that "[e]xamples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8.

Gill asserts that the district court failed to explain why his conduct was unusually cruel or heinous, and maintains that his act was no worse than any other shooting. We disagree. In departing upward, the court observed that Gill's conduct was unusually cruel because he walked into the Community Mart and immediately shot Alsad directly in the head, without providing him any warning or an opportunity to comply with a demand for money. It was not unreasonable for the court to conclude that Gill's action in this regard constituted gratuitous infliction of injury, which section 5K2.8 expressly spells out as an example of extreme conduct. Accordingly, we reject Gill's contention that the court unreasonably departed on this ground.

## B.

Finally, Gill maintains that his sentence was unreasonable because the district court failed to adequately demonstrate its consideration of the § 3553(a) sentencing factors and his contentions in opposition to the upward departure motion. A sentence may be procedurally unreasonable if the court "provides an inadequate statement of reasons or fails to make a necessary

11

factual finding." United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).[5] Although a sentencing court "need not robotically tick through § 3553(a)'s every subsection," its explanation "must be elaborate enough to allow an appellate court to effectively review the reasonableness of the sentence." United States v. Montes-Pineda, 445 F.3d 375, 380 (4th Cir. 2006) (internal quotation marks omitted). As Gill emphasizes, a sentencing court should provide some indication that it assessed the § 3553(a) factors with respect to its sentencing of the defendant and also weighed the potentially meritorious arguments raised by the parties concerning sentencing. See id.

The district court amply satisfied these standards in its explanation of Gill's sentence. With regard to the § 3553(a) factors, the court observed during the sentencing hearing that Gill's sentence would "insure that the defendant does not engage in future criminal conduct." See J.A. 81-82; 18 U.S.C. § 3553(a)(2)(C) (further crimes of the defendant). The court further asserted that the sentence "adequately accounts for the severity of the offense." See J.A. 82; 18 U.S.C. § 3553(a)(1) (nature and

---

[5]Although Gill's brief asserts that he is challenging the substantive reasonableness of his sentence, he actually contests only the district court's purported failure to adequately discuss the § 3553(a) factors and his sentencing contentions. Accordingly, we analyze his position in this regard as a challenge to his sentence's procedural, rather than substantive, reasonableness. See Moreland, 437 F.3d at 434 (explaining distinction between procedural and substantive reasonableness).

circumstances of the offense), (a)(2)(A) (seriousness of the offense). Gill's sentence, the court determined, also properly took into account "the defendant's past criminal record." J.A. 82, 18 U.S.C. § 3553(a)(1) (history and characteristics of the defendant). And, the court explained that it had considered each intervening offense level between Gill's pre-departure level of 23 and his post-departure level of 30, and found the post-departure level to be appropriate. See 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . . this subsection."). Additionally, in its written Statement of Reasons, the court reiterated its consideration of several of these factors and advised that yet another reason for Gill's sentence was to afford adequate deterrence to criminal conduct, pursuant to § 3553(a)(2)(B). In these circumstances, the court can hardly be said to have disregarded the principles of § 3553(a).

With respect to its handling of Gill's contentions on his sentence, the district court informed the parties at the outset of the sentencing hearing that it had already considered their written submissions. It then allowed them to recapitulate and argue orally the views they had previously spelled out in writing. When Gill offered the court a newly received letter praising his efforts at rehabilitation, the court accepted the letter and read it before pronouncing Gill's sentence. The record thus indicates that the

13

court properly considered Gill's sentencing positions. His sentence is not rendered procedurally unreasonable merely because the court conducted no checklist-style recitation of his contentions, especially since his principal emphases at the sentencing hearing — age and ill health — were immaterial to the departure provisions that the court invoked. In the context of the undisputed record of Gill's reprehensible conduct and his unpersuasive opposition to the motion for upward departure, the court's explanation in this regard was more than adequate for us to evaluate the reasonableness of his sentence. See Montes-Pineda, 445 F.3d at 381 (asserting importance of context in assessing adequacy of explanation of sentence).

## IV.

Pursuant to the foregoing, we affirm the sentence imposed by the district court.

AFFIRMED