UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Joseph DALTON,
Defendant–Appellant.

No. 05–5265.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 28, 2006.

Decided Feb. 27, 2007.

**ARGUED:** H. Stanley Feldman, Charleston, South Carolina, for Appellant. Brent Alan Gray, Assistant United States Attorney, Office of the United States Attorney, Charleston, South Carolina, for Appellee. **ON BRIEF:** Reginald I. Lloyd, United States Attorney, Charleston, South Carolina, for Appellee.

Before WILKINSON, MOTZ, and GREGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge WILKINSON wrote the opinion, in which Judge MOTZ and Judge GREGORY joined.

## OPINION

WILKINSON, Circuit Judge.

Thomas Dalton appeals the sentence arising from his conviction for credit card fraud in violation of 18 U.S.C. § 1029(a)(2) (2000). He argues that the district court acted unreasonably in imposing a 105–month sentence, an upward departure of nearly eighty-five percent from the top of the advisory guidelines range. While we decline defendant's invitation to hold any upward departure unreasonable, the degree of departure from the advisory guidelines range requires further explanation and we therefore vacate and remand for resentencing.

### I.

Defendant Thomas Dalton used other people's credit cards to buy approximately $100,000 worth of computer programs over the Internet. He then sold the expensive software on E–Bay. On December 10, 2003, Dalton was indicted on one count of credit card fraud. The indictment charged Dalton with the knowing and intentional use of more than one unauthorized access

device to obtain goods, services, and cash having an aggregate value in excess of $1,000 in violation of 18 U.S.C. § 1029(a)(2).

Dalton pled guilty on March 1, 2004. On September 8, 2004, the district court sentenced him to a term of 105 months' imprisonment, three years supervised release, restitution in the amount of $98,851.64, and a $100 special assessment under the then mandatory guidelines. Dalton appealed and this court remanded for resentencing in light of the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Dalton*, 150 Fed.Appx. 219 (4th Cir.2005). On remand, the district court held a second sentencing hearing and re-sentenced Dalton to 105 months' imprisonment under the advisory guidelines. Dalton now appeals the corrected sentence.

## II.

### A.

■ Imposing a post-*Booker* sentence under the advisory guidelines is a multi-step process. *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir.2006). First, the district court "must correctly determine, after making appropriate findings of fact, the applicable guidelines range." *Id.* The court then considers whether a sentence within that range "serves the factors set forth in § 3553(a) and, if not, select[s] a sentence that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir.2006). In selecting a sentence outside the advisory guidelines range, the court should first consider whether appropriate grounds for departure exist. *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir.2006); *Moreland*, 437 F.3d at 432. When "an appropriate basis for departure exists, the district court may depart."

*Moreland*, 437 F.3d at 432. "If the resulting departure range still does not serve the factors set forth in § 3553(a)," the court may impose a variance sentence. *Davenport*, 445 F.3d at 370.

### B.

■ The district court in this case granted the government's motion for upward departure on the ground that Dalton's criminal history category inadequately reflected his actual criminal history. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4A1.3 (2006). Because the district court properly imposed a departure sentence before considering a variance sentence, *Davenport*, 445 F.3d at 370, this case presents no question as to whether a variance sentence would be appropriate. We review the court's departure for reasonableness. *Id.*

To begin with, the presentence investigation report ("PSR") in this case recommended a base offense level of six and a total offense level of sixteen. *See* U.S.S.G § 2B1.1(a)(2). Based on Dalton's past criminal conduct, the PSR assigned him fifteen criminal history points, placing him in Criminal History Category VI. The advisory guidelines range for Dalton's sentence was 46–57 months' imprisonment.

At the first sentencing hearing, the district court adopted paragraphs 1 through 116 of the PSR as findings of fact. The court found that Dalton had twenty-three potential criminal history points that had not been included in Dalton's criminal history count. It combined these points with the countable criminal history points, arriving at a total criminal history score well beyond the thirteen points needed to establish a criminal history category of six. Based on these criminal history findings, the district court granted the government's motion for an upward departure and extended the table horizontally impos-

ing a 105–month sentence. On remand, the district court again evaluated defendant's criminal history; the court then considered the 18 U.S.C. § 3553(a) sentencing factors, determined that the appropriate guidelines range was 100 to 125 months, and reimposed the 105–month sentence.

## III.

### A.

■ Dalton maintains that the 105–month sentence imposed by the district court was unreasonable. The Sentencing Guidelines specify that an upward departure is warranted when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. To determine whether a criminal history category underrepresents the seriousness of a defendant's criminal history, a district court may consider both "[p]rior sentences not used in computing the criminal history category" and "[p]rior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(A),(E).

In light of these principles, the district court's conclusion that "Dalton's criminal history category of six does not adequately reflect [his] past criminal conduct or his chances of recidivism" was a reasonable one. *See United States v. Cash*, 983 F.2d 558, 560–61 (4th Cir.1992) (holding upward departure based on finding that Criminal History Category VI underrepresented de-

fendant's actual criminal history reasonable). For Dalton has an extensive criminal history. He has been arrested forty times since 1975. Of Dalton's forty arrests, twenty-four resulted in convictions; eighteen convictions involved fraud and one the use of a weapon. Many of Dalton's prior arrests and convictions were left unaccounted for in the PSR calculations. Dalton was not given criminal history points for nine offenses that occurred more than ten years prior to the instant offense. An additional eleven arrests and convictions were not assigned criminal history points because they were "related" to the credit card offense.[1]

We do note that the district court's findings of twenty-one attributable criminal history points and twenty-three potential history points are in tension with the PSR, which calculated fifteen criminal history points. On remand, the district court should explain its criminal history calculations, specifying which arrests and convictions form the basis for the additional points. But the fact remains that an upward departure on the ground that the criminal history category underrepresented Dalton's criminal history was undeniably reasonable. As the district court explained, defendant's forty arrests as well as his admission that he had on many occasions promptly resumed his fraudulent enterprises upon release from jail—indeed, even conducting some of those enterprises from jail—demonstrated a "continuing pattern of criminal behavior [that] reflects a high probability of recidivism." As a result, Dalton "would pose a serious risk to the community" if the instant offense were

---

1. Defendant's contention that the district court erred by considering prior arrests misses the mark. Although section 4A1.3 provides that "a prior arrest record itself" may not form the basis for a departure, a departure may be based upon "the facts underlying [prior] arrests." *United States v. Dixon*, 318 F.3d

585, 591 (4th Cir.2003). Here, the criminal conduct findings provided in the PSR and adopted by the district court go well beyond the mere fact of arrest. Thus, on remand, the district court may rely upon facts "underlying [prior] arrests" without running afoul of section 4A1.3. *See id.*

"not adequately addressed." Thus, the district court "reasonably concluded that a sentence above the advisory guideline range was warranted." *Davenport,* 445 F.3d at 371.[2]

## B.

■■■ Nonetheless, even where an upward departure from Criminal History Category VI is plainly warranted, a sentencing court must depart incrementally, explaining the reasons for its departure. The Sentencing Guidelines provide that when a sentencing court "determines that the extent and nature of the defendant's criminal history ... warrant an upward departure from Criminal History Category VI" the court "should structure the departure *by moving incrementally down the sentencing table* to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B) (emphasis added). A court, in other words, "should move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." *Cash,* 983 F.2d at 561. In this case, the district court departed from section 4A1.3's requirements in two ways.

### 1.

■■■ To begin with, the district court failed to employ the incremental approach dictated by § 4A1.3(a)(4)(B). *See Cash,* 983 F.2d at 561; *United States v. Rusher,* 966 F.2d 868, 884 (4th Cir.1992); U.S.S.G. § 4A1.3(a)(4)(B); § 3553(c)(2). Section

4A1.3's mandate to depart incrementally does not, of course, require a sentencing judge "to move only one level, or to explain its rejection of each and every intervening level." *See e.g., United States v. Little,* 61 F.3d 450, 454 (6th Cir.1995) (quotation omitted); *see also United States v. Taylor,* 88 F.3d 938, 948 (11th Cir.1996). And while a court should indicate its reasons for departing upward under section 4A1.3, it need not "incant the specific language used in the guidelines," *Rusher,* 966 F.2d at 882, or "go through a ritualistic exercise in which it mechanically discusses each criminal history category [or offense level] it rejects en route to the category [or offense level] that it selects." *United States v. Lambert,* 984 F.2d 658, 663 (5th Cir.1993) (en banc); *see also Taylor,* 88 F.3d at 948; *Little,* 61 F.3d at 454.

■■■ Here, however, the district court imposed a sentence almost twice the top of the advisory guidelines range. Whether a departure is upward or downward, "[t]he farther the [sentencing] court diverges from the advisory guideline range," the more a reviewing court must "carefully scrutinize the reasoning offered by the district court in support of the sentence." *United States v. Hampton,* 441 F.3d 284, 288 (4th Cir.2006); *see also Moreland,* 437 F.3d at 434. The requirement that dramatic departures require more extensive justification, *see Hampton,* 441 F.3d at 288, arises from "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *United States v. Eura,* 440 F.3d 625

---

**2.** Defendant also claims that the district court erred by counting the seriousness of his offense against him twice. He argues that the court not only increased his base offense level by ten points due to the amount of loss and method used to commit the fraud, but also departed upward based on its view of the seriousness of the offense—"a matter already accounted for in the Sentencing Guideline calculation." Defendant's contention is without merit: the sentencing court's upward departure was based on the seriousness of Dalton's *past* criminal history, not the seriousness of his *present* offense.

(4th Cir.2006) (quoting 18 U.S.C. § 3553(a)(6)); *see also Rusher,* 966 F.2d at 882. In view of the magnitude of the district court's departure, the court's fairly general statement that it "considered lesser offense levels and found them to be inadequate" falls short of the incremental analysis required by section 4A1.3. *See Moreland,* 437 F.3d at 434.

### 2.

The district court also erred by extending the sentencing table beyond Criminal History Category VI on a horizontal axis. When a defendant is already in the highest criminal history category, Category VI, a sentencing court must depart on the vertical axis, "moving incrementally *down* the sentencing table to the next higher offense level." U.S.S.G. § 4A1.3(a)(4)(B) (emphasis added); *see also United States v. Smith,* 289 F.3d 696, 711 (11th Cir.2002). On remand, the district court should "move down the [Criminal History Category] VI column to successively increasing offense levels until an appropriate sentencing range is reached." *United States v. Hardy,* 99 F.3d 1242, 1248 n. 8 (1st Cir. 1996); *see also Taylor,* 88 F.3d at 947–48.[3]

In sum, defendant's criminal history is serious and his rate of recidivism glaring. Therefore, the district court's decision to depart upward from Criminal History Category VI was reasonable. Because the court's departure from the advisory guidelines range was substantial, however, and because the court failed to make incremental findings as required by the Sentencing Guidelines at § 4A1.3, a more rigorous sentencing analysis is required. We thus

vacate the sentence and remand to the district court for further proceedings.

*VACATED AND REMANDED.*

---

**3.** We note the district court's reliance on this court's suggestion in *United States v. Cash* that a sentencing court might extrapolate horizontally from Category VI. *See Cash,* 983 F.2d at 561. But the Sentencing Guidelines now direct district courts to depart vertically from Category VI by "moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until [the court] finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B).