**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4223

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ZACHARY B. TINSLEY,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   Henry E. Hudson, District Judge.  (3:05-cr-000999-HEH)

Argued:  December 1, 2006                    Decided:  May 1, 2007

Before MOTZ and TRAXLER, Circuit Judges, and David A. FABER, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

**ARGUED:** Carolyn Virginia Grady, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Matthew Childs Ackley, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:** Michael S. Nachmanoff, Acting Federal Public Defender, Richmond, Virginia, for Appellant.  Chuck Rosenberg, United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Zachary Tinsley was convicted of unlawful possession of a firearm by a felon. See 18 U.S.C.A. § 922(g)(1) (West 2000). Under the Sentencing Guidelines, the advisory sentencing range was 33-41 months. The district court granted the government's motion for an upward departure and sentenced Tinsley to 120 months. Tinsley appeals, challenging his sentence and conviction. For the reasons set forth below, we affirm Tinsley's conviction, but we vacate his sentence and remand for re-sentencing.

I.

Police officers in Richmond, Virginia, stopped a car registered to Tinsley, for whom there was an outstanding arrest warrant. Tinsley was driving the car, and Darryl Payne was in the passenger seat. Once Tinsley was out of the car and handcuffed, an officer told Tinsley that he was going to search the car. Tinsley became agitated and said, "You can't search the car. You have no right to search the car." J.A. 45. Tinsley then told Payne, who was still near the car, to lock the car and not to let the police search the car. The search proceeded despite Tinsley's objections, and a loaded .25 caliber pistol was found in the glove box. While Tinsley was in the police station awaiting processing, Tinsley began talking to himself in a way that the attending police officer believed he was supposed to overhear. Tinsley mumbled, "He

3

was sitting closest to the gun. Who could reach the gun the easiest? . . . I can't believe my nephew would set me up like that." J.A. 55.

Payne (the passenger) reluctantly testified for the government at trial. He said that while he is not related to Tinsley, he considers Tinsley to be his uncle. Although Payne did not testify that the gun belonged to Tinsley, Payne did say that he did not own the car, that the gun was not his, and that he had not put it in the glove box. On cross-examination, counsel for the defense established that Payne was a heroin addict and that Payne had, just before he testified against Tinsley, pleaded guilty to a felony concealed weapons charge. The jury found Tinsley guilty of being a felon in possession of a firearm.

The presentence report ("PSR") prepared for Tinsley's sentencing detailed Tinsley's criminal record, which included multiple drug and weapons charges. Four convictions (including two firearms charges) that Tinsley had committed were not counted because the convictions were too old, and the PSR mentioned ten arrests that did not result in convictions. Because Tinsley committed the instant offense while he was on probation and within two years of release from a prior term of imprisonment, he received three additional criminal history points. His countable criminal record, along with the additional points, gave Tinsley a category V criminal history, with 12 criminal history points. With a base

4

offense level of 14, Tinsley's advisory sentencing range was 33-41 months.

The government moved for an upward departure, asking the district court to increase the offense level and criminal history category. The district court granted the motion, concluding that even though Tinsley did not qualify as a career offender under the Guidelines, his criminal history score substantially under-represented the extent of Tinsley's criminal activity and the likelihood that he would re-offend. Concluding that Tinsley was a de facto career criminal, the district court increased Tinsley's criminal history to category VI. The court stated that "if there is ever someone who warrants the maximum sentence, it is Mr. Tinsley," J.A. 186-87, and the court determined that an upward departure of 10 offense levels was warranted. Tinsley's new offense level of 24 and category VI criminal history yielded a sentencing range of 100-125 months. The court then imposed a sentence of 120 months, the statutory maximum.

## II.

On appeal, Tinsley first challenges the sufficiency of the government's evidence. "A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). "In reviewing the sufficiency

5

of the evidence . . ., our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Id. (internal quotation marks omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

A conviction under § 922(g)(1) requires the government to establish that "(1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce." United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc). Possession may be actual, constructive, or joint. See United States v. Gallimore, 247 F.3d 134, 136-37 (4th Cir. 2001).

On appeal, Tinsley contends that the government failed to prove possession. He argues that there was no evidence that he was in actual possession of the firearm and that the circumstantial evidence of constructive possession was, at most, equally suggestive of possession by Tinsley or Payne, given that the gun was in the glove box and was thus most accessible to Payne. Citing United States v. Sanchez, 961 F.2d 1169 (5th Cir. 1992), Tinsley

contends that we must reverse his conviction. See id. at 1173 ("If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, this court must reverse the convictions." (internal quotation marks omitted)). We disagree.

"A person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises or vehicle in which it was concealed." United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999). In this case, the car in which the gun was found was registered to Tinsley, and Tinsley was driving it when the gun was found. The jury was thus entitled to conclude that Tinsley had dominion and control over the car. In addition, Tinsley became highly agitated when the police told him that they were going to search the car, which suggests that Tinsley knew there was something in the car that he did not want the police to find. And most importantly, Payne testified at trial that the gun did not belong to him and that he did not put the gun in the car. In our view, this evidence was more than sufficient to permit the jury to conclude that the gun belonged to Tinsley rather than Payne. Accordingly, we reject Tinsley's challenge to his conviction.

III.

We turn now to Tinsley's challenges to the ten-year sentence imposed by the district court. Sentencing in the post-<u>Booker</u>[1] world is a multi-step procedure. The district court first must correctly calculate the sentencing range prescribed by the Guidelines. <u>See</u> <u>United States v. Hughes</u>, 401 F.3d 540, 546 (4th Cir. 2005). The court must then consider whether this advisory sentencing range "serves the factors set forth in § 3553(a)"; if the sentence does not serve the § 3553(a) factors, the court must "select a sentence that does serve those factors." <u>United States v. Green</u>, 436 F.3d 449, 456 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2309 (2006). When selecting a sentence that serves the purposes of § 3553(a), the district court must consider

> whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence.

<u>United States v. Moreland</u>, 437 F.3d 424, 432 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2054 (2006).

We review a post-<u>Booker</u> sentence for reasonableness, which includes procedural and substantive components. "A sentence may be procedurally unreasonable . . . if the district court provides an inadequate statement of reasons or fails to make a necessary

---

[1]<u>United States v. Booker</u>, 543 U.S. 220 (2005).

factual finding.  A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." Id. at 434. "When we review a sentence outside the advisory guideline range-- whether as a product of a departure or a variance--we consider both whether the district court acted reasonably with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the guideline range."  United States v. Davenport, 445 F.3d 366, 370-71 (4th Cir. 2006).

The district court at sentencing concluded that Tinsley's criminal history category "substantially underrepresents the extent of his criminal activity and the likelihood of reoffending."  J.A. 186.  And although Tinsley was ineligible for sentencing as a career criminal, the district court believed that Tinsley was a "de facto" career criminal.  The court raised Tinsley's criminal history to category VI and his offense level from 14 to 24, changes that increased Tinsley's advisory sentencing range from 33-41 months to 100-125 months.  The court then sentenced Tinsley to 120 months imprisonment.

On appeal, Tinsley raises several challenges to his sentence. Tinsley first contends that the district court erred in its approach to the departure.  Tinsley argues that after increasing his criminal history category, the district court should have moved sequentially through each higher offense level, considering the

sentence called for at each level and moving on to the next higher offense level only after explaining why that sentence was inadequate.

If a district court concludes that an upward departure is required for a defendant with a category VI criminal history, the Sentencing Guidelines require the court to "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B). Thus, the sentencing court should "move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992).

Tinsley contends that the requirements of § 4A1.3(a)(4)(B) became applicable once the district court moved him into criminal history category VI. Tinsley argues that resentencing is required because the district court failed to move incrementally down the sentencing table. See, e.g., Green, 436 F.3d at 457 (explaining that if a "sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated").

The district court in this case did not move incrementally down the sentencing table when imposing sentence. The court stated that it believed that Tinsley's criminal history score

10

"substantially underrepresents the extent of [Tinsley's] criminal activity and the likelihood of reoffending." J.A. 186. The court moved Tinsley into criminal history category VI and thereafter did not explicitly consider <u>any</u> of the intervening offense levels. Instead, the court simply announced its view that a "departure of ten . . . levels is appropriate." J.A. 205. Although the Guidelines' "mandate to depart incrementally does not . . . require a sentencing judge to move only one level, or to explain its rejection of each and every intervening level," <u>United States v. Dalton</u>, 477 F.3d 195, 199 (4th Cir. 2007) (internal quotation marks omitted), the district court's approach falls well short of that required by § 4A1.3(a)(4)(B) and <u>Cash</u>. <u>See</u> <u>id.</u> at 200 (concluding that district court's statement that it "'considered lesser offense levels and found them to be inadequate'" did not satisfy the requirements of § 4A1.3 and remanding for resentencing).

It is not entirely certain, however, that § 4A1.3(a)(4)(B) is directly applicable to this case, given that Tinsley's criminal history score originally placed him in category V rather than category VI. Nonetheless, even assuming that § 4A1.3(a)(4)(B) is not strictly applicable, the district court's failure to move incrementally down the sentencing table and to explain why the intervening offense levels did not yield an sufficient sentence is relevant to another of Tinsley's challenges to his sentence--that the district court's explanation of the sentence is inadequate.

After <u>Booker</u>, a sentencing court must explain the reasons behind the sentence it imposes, "particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary." <u>Moreland</u>, 437 F.3d at 432. "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable." <u>Id.</u> at 434. "However, when the variance is a substantial one . . ., we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." <u>Id.</u>

In this case, the sentence imposed by the district court is nearly three times the high end of Tinsley's advisory sentencing range. The district court's explanation of the sentence, however, fails to set out compelling reasons justifying such a substantial departure from the advisory sentencing range.

The district court's explanation for its sentence focused almost exclusively on Tinsley's "terrible" criminal record. J.A. 190. Tinsley's record included seven felony convictions, plus multiple misdemeanors, and there were several convictions that had not been included in the Guidelines calculation. Five of Tinsley's prior convictions were for firearms offenses, and the district

12

court noted that Tinsley had repeatedly violated the terms of his probation, parole, and supervised release. Given Tinsley's extensive criminal past, the district court reasonably concluded that an upward departure was warranted. That Tinsley has a bad criminal record, however, does little to distinguish Tinsley from other defendants with a category VI criminal history, and the mere fact of Tinsley's bad record, standing alone, does not serve as an adequate explanation of how the district court selected the 120-month sentence from the range of sentencing options available. Because the district court failed to proceed incrementally down the sentencing table, as required by § 4A1.3(a)(4)(B), or otherwise explain why it settled on a sentence of 120 months, the court's explanation of the sentence does not provide us with a basis for reviewing the reasonableness of the particular sentence imposed by the court. Accordingly, we must vacate Tinsley's sentence and remand for resentencing with "a more rigorous sentencing analysis." Dalton, 477 F.3d at 200; see United States v. Hampton, 441 F.3d 284, 288-89 (4th Cir. 2006) (finding explanation of sentence substantially below the advisory range to be inadequate where "the court did not explain how this variance sentence better served the competing interests of § 3553(a) than the guidelines sentence would").[2]

---

[2]Given our disposition of these issues, we need not address Tinsley's other challenges to his sentence. As to Tinsley's claim that the 120-month sentence imposed by the distict court is

13

IV.

Accordingly, for the foregoing reasons, we hereby affirm Tinsley's conviction.  However, we vacate Tinsley's sentence and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

---

unreasonably long, we note only that we have rejected similar sentences in cases involving defendants with extensive criminal records.  See United States v. Davenport, 445 F.3d 366, 372 (4th Cir. 2006) (finding unreasonable a sentence of 120 months where advisory sentencing range was 30-37 months and defendant had more than twice the number of criminal history points needed to place him in category VI); see also United States v. Tucker, 473 F.3d 556, 564-65 (4th Cir. 2007) (in case where advisory sentencing range was 24-30 months, finding sentence of 144 months to be excessive notwithstanding district court's reasonable belief that the defendant, who was before the court on her third conviction for embezzling from an employer, was highly likely to re-offend).  The district court on remand should give due consideration to these cases when imposing and explaining Tinsley's sentence.

14