**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-4545**

_____

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

DEWAYNE JEMALE BLAKENEY,

             Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.   James C. Dever III,
District Judge.  (4:10-cr-00036-D-1)

_____

Argued:  October 25, 2012          Decided:  December 13, 2012

_____

Before NIEMEYER, GREGORY, and THACKER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote
a separate opinion concurring in the judgment.

_____

**ARGUED:** Mary Jude Darrow, Raleigh, North Carolina, for
Appellant.   Yvonne Victoria Watford-McKinney, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P.
May-Parker, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On November 8, 2010, DeWayne Jemale Blakeney pleaded guilty to one count of manufacturing counterfeit federal reserve notes, in violation of 18 U.S.C. § 471. Blakeney now appeals his sentence of 120 months imprisonment arguing that it is unreasonable. For the following reasons, we affirm the district court's judgment.

I.

On May 6, 2009, Blakeney passed counterfeit currency at a Subway restaurant in Vanceboro, North Carolina, and was arrested the next day. On May 20, 2009, Nicki Nolder and Ashley Duzan passed counterfeit bills at a Walmart in Washington, North Carolina, and were also arrested. Further investigation again led to Blakeney, who admitted producing about $30,000 in counterfeit currency together with Noah Campbell and Thomas King. Blakeney was cooperative and admitted his criminal conduct. In a two-count indictment filed in the Eastern District of North Carolina on May 5, 2010, Blakeney was charged with counterfeiting and conspiracy to counterfeit. On November 8, 2010, he pled guilty to counterfeiting in violation of 18 U.S.C. § 471.

In the presentence report, the probation officer recommended a base offense level of 9 under U.S. Sentencing

2

Guidelines ("USSG") § 2B5.1(a), with a 4-level increase under subsection (b)(1)(B) for an offense involving $10,000-$30,000, and a further increase to offense level 15 because Blakeney possessed counterfeiting devices or materials. See § 2B5.1(b)(2)(A), (b)(3). With a 2-level role adjustment under USSG § 3B1.1(c) and a 3-level reduction for acceptance of responsibility, USSG § 3E1.1, the total recommended offense level was 14. Blakeney had 15 criminal history points, which placed him in category VI. As a result, his recommended advisory Guidelines range was 37-46 months. The probation officer also suggested that the district court consider an upward departure pursuant to USSG § 4A1.3 because category VI was inadequate to account for Blakeney's prior criminal record, including 28 prior convictions, 16 of which were unscored.

Blakeney filed objections challenging the Guidelines computation, in which he mentioned as a "factual" objection that 10 of the 50 or so arrests listed in paragraph 42 of the presentence report resulted from a failed relationship. The United States moved for an upward departure under § 4A1.3, pointing out that Blakeney, who was 38 years old, had 28 criminal convictions between 1992 and 2009, most of which were for relatively minor crimes such as larceny, drug possession, trespassing, communicating threats, and driving offenses. However, Blakeney had one prior federal conviction for a crack

3

conspiracy and, after he served his federal sentence, he violated his supervised release and, therefore, his supervised release was revoked. The United States argued that category VI was an inadequate representation of Blakeney's criminal history, and that Blakeney was very likely to commit future crimes, thus making an upward departure appropriate. Blakeney in turn filed a sentencing memorandum in which he requested a downward departure to a sentence of 33 months, based on his concern that North Carolina had given him less credit than he deserved against his prior state sentences for his time in detention on state charges.

When Blakeney was sentenced in May 2011, the district court overruled his objections to the presentence report. The United States asked for an upward departure to a sentence of 60 months. Defense counsel asked for a sentence at the top of the Guidelines range. The district court departed above category VI by increasing the offense level from 14 to 26, which produced a new Guidelines range of 120-150 months. In doing so, the district court stated that it was not required to discuss each offense level it rejected in the course of selecting the appropriate offense level, citing United States v. Dalton, 477 F.3d 195, 199 (4th Cir. 2007).

In support of the offense level increase, the district court observed that but for the fact that some of Blakeney's

4

sentences were too old to be counted, he would have had 33 criminal history points, and that his 2004 federal sentence had been reduced from 140 months to 60 months -- after which he committed still more offenses.

After considering the 18 U.S.C. § 3553(a) (2006) factors and the advisory sentencing guidelines, the district court imposed a sentence of 120 months. The court also ordered Blakeney to pay restitution in the amount of $1,330 to 11 businesses where he had passed counterfeit currency. The court noted that it had considered defense counsel's arguments for a lower sentence, including her assurances that Blakeney was ready to change his life and the fact that none of his co-defendants were prosecuted in federal court. Following the sentencing hearing, the court set out its findings and reasons for the upward departure in a written sentencing order. The district court explained:

> Blakeney stands before the court at 38 years of age with a long, profound, and disturbing criminal history. Blakeney is a recidivist's recidivist. . . . Blakeney's conduct reflects no respect for the law. Indeed, instead of rejecting a criminal lifestyle following his first federal conviction and incarceration, Blakeney violated his supervised release conditions by engaging in new felonious criminal conduct. Even after a revocation of his supervised release and additional incarceration, Blakeney returned to his criminal behavior by again possessing controlled substances and committing the instant offence. . . . Both specific and general deterrence are critical in this case, particularly given Blakeney's serious offense behavior, extensive

5

criminal record, lack of respect for the law, poor performance while on probation or under supervision, and near certain likelihood of recidivism. Society has long needed protection from Blakeney and today will receive it.

United States v. Blakeney, No. 4:10-CR-36-D, 2011 WL 2118077, *5 (E.D.N.C. May 27, 2011).[1] Blakeney now appeals his sentence, arguing that it was unreasonable and an abuse of discretion by the district court.

II.

We review for reasonableness a sentence imposed by a district court, applying an abuse of discretion standard. See Gall v. United States, 552 U.S. 38, 51 (2007). In undertaking such a review, "we must first ensure that the district court committed no significant procedural error," such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." United States v. Diosdado–Star, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted).

---

[1] The district court's written sentencing order is found at J.A. 139-161. Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Absent a significant procedural error, our next step is to assess the substantive reasonableness of the sentence imposed. See id. In either event, a "deferential abuse-of-discretion standard" applies to "any sentence, whether inside, just outside, or significantly outside the Guidelines range." United States v. Savillon-Matute, 636 F.3d 119, 122 (4th Cir. 2011) (internal quotation marks omitted). The district court "has flexibility in fashioning a sentence outside of the Guidelines range," and need only "set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis" for its decision. United States v. Diosdado-Star, 630 F.3d 359, 364 (4th Cir. 2011) (citing Rita v. United States, 551 U.S. 338, 356 (2007)). As the Supreme Court has cautioned, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall, 552 U.S. at 51.

Blakeney appears to argue that the district court erred when it departed upward from the advisory Guidelines range and because the extent of the departure was unreasonable. A district court may depart upward based upon the inadequacy of the defendant's criminal history if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the

7

defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(a)(1).

Blakeney contends that in deciding to depart, the district court failed to give due regard to several factors in reaching the departure decision, including the non-violent nature of his offense, the alleged disparity in treatment between himself and his coconspirators, his cooperation with the government, his record of minor offenses, and the misdemeanor-character of his recidivism. To the contrary, the district court properly considered each of these factors and rejected them. The district court found Blakeney repeatedly committed the serious counterfeiting offense, thereby victimizing multiple establishments. The district court also observed that Blakeney's criminal record was "extraordinary," and that he was a "recidivist's recidivist" who "repeatedly rejected living a crime-free lifestyle." (J.A.-I 114-15). These observations are readily supported by appellant's 16 unscored prior convictions. A sentencing court may consider unscored convictions in determining whether an upward departure is warranted. See United States v. Myers, 589 F.3d 117, 126 (4th Cir. 2009).

The district court also found Blakeney had received lenient sentences on many prior occasions, "[i]ncluding a lack of punishment for repeated violations of probationary sentences." (J.A.-I 94). The district court further stated

8

that, even were it not to consider the seven misdemeanor convictions and 10 arrests that stemmed from his romantic relationship, Blakeney would "still would have amassed a staggering 22 convictions and 40 arrests in 17 years as an adult," including over six years he spent incarcerated. (J.A.-I 95). The court explained that it was only addressing Blakeney's arrests to respond to his objections to the Presentence Report. The district court correctly rejected appellant's claim of disparate treatment from his accomplices. See United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996). Moreover, Blakeney's claim that the district court did not factor his cooperation into its decision to depart is belied by the record.[2] The district court stated, "I have considered your counsel's argument about your cooperation and I've taken that into account. Just punishment includes taking that into account and I have." (J.A. 117). In view of the foregoing, the district court's decision to depart upward was well-supported by the record.

After properly calculating the advisory guideline range and giving the parties an opportunity to argue for an

---

[2] Of note, Blakeney received a three point downward adjustment to his Guidelines calculation pursuant to USSG § 3E1.1: two points for acceptance of responsibility and one point for assisting authorities in the investigation and prosecution of his own misconduct.

appropriate sentence, a "district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 552 U.S. at 49-50. "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the [departure]." Id. at 50. When reviewing an upward departure, the court considers "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). "[A] major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50. "If a court provides an inadequate statement of reasons or relies on improper factors in imposing a sentence outside the properly calculated advisory sentencing range, the sentence will be found unreasonable and vacated." Hernandez-Villanueva, 473 F.3d at 123. Whether a departure is upward or downward, "[t]he farther the [sentencing] court diverges from the advisory guideline range," the more a reviewing court must "carefully scrutinize the reasoning offered by the district court in support of the sentence." United States v. Hampton, 441 F.3d 284, 288 (4th Cir. 2006).

10

Here, the district court determined the applicable sentencing range was 37 to 46 months, based on offense level 14 and criminal history category VI. It then concluded that an upward departure to offense level 26 "adequately reflects the nature, number, and seriousness of Blakeney's prior convictions and the likelihood of Blakeney committing other serious crimes." (J.A.-I 147). Coupling criminal history category VI and offense level 26 yields a sentencing range of 120 to 150 months imprisonment. Blakeney was ultimately sentenced to 120 months, reflecting an upward departure of roughly 260%.[3]

Explaining its rationale for the upward departure, the district court articulated the following facts: (1) Blakeney "has a deeply troubling history of relentless criminal conduct" in which he committed crimes for most of his adult life; (2) his criminal history includes over 29 convictions; (3) he was convicted twice of larceny and seven times of controlled substance offenses, including felonies; (4) "but for the time period limitation in [USSG §]4A1.2(e) and the four point limitation in [USSG] section 4A1.1(c)," appellant's criminal history points would have totaled "an utterly staggering" 33 points; (5) on many occasions, Blakeney received lenient

---

[3] The statute provides for a 20-year maximum term of imprisonment. 18 U.S.C. § 471.

sentences, "[i]ncluding a lack of punishment for repeated violations of probationary sentences;" (6) he "squandered the opportunity" afforded to him when his federal sentence on a crack conspiracy conviction was reduced from 140 months imprisonment to 60 months imprisonment; (7) he pleaded guilty to seven charges that stemmed from his relationship with a former girlfriend, and that on one of those charges Blakeney resisted a law enforcement officer; and, (8) even if the district court ignored the seven misdemeanor convictions, appellant "still would have amassed a staggering 22 convictions and 40 arrests in 17 years as an adult, over six of which were spent incarcerated." (J.A.-I 94-95).

In addition, the district court considered the fact that Blakeney, "in light of the entire record," was a recidivist for whom there was "a near certain likelihood of future recidivism." (J.A.-I 95). The district court found specific deterrence of appellant was "critical in this case" because of his "extraordinary criminal record," lack of respect for the law, and the certainty of recidivism. (J.A.-I 116).

Where an upward departure from criminal history category VI is warranted, a sentencing court must depart incrementally, explaining the reasons for its departure. See U.S.S.G. § 4A1.3(a)(4)(B); United States v. Dalton, 477 F.3d 195, 199 (4th Cir. 2007). Even so, "Section 4A1.3's mandate to

12

depart incrementally does not, of course, require a sentencing judge to move only one level, or to explain its rejection of each and every intervening level". Id. Similarly, a sentencing court need not "incant the specific language used in the guidelines, or go through a ritualistic exercise in which it mechanically discusses each criminal history category or offense level it rejects en route to the category or offense level that it selects." Id. (internal quotation marks and citations omitted). It is enough that the district court employed a well-reasoned process or, stated otherwise, to have "extrapolated from the structure and methodology of the Guidelines in calibrating its upward departures." United States v. Rivera-Santana, 668 F.3d 95, 104 (4th Cir. 2012).

In this case, the district court's determination that an upward departure to 120 months imprisonment was compelled by Blakeney's criminal history and the § 3553 factors is well-supported by the record. The district court considered the defendant's arguments and rejected them. Its explanations for the sentence it imposed were sufficient to justify the extent of the departure, as described above. See United States v. Whorley, 550 F.3d 326, 339-42 (4th Cir. 2008) (upward departure 33% above advisory guidelines range amply supported by defendant's almost continuous pursuit of criminal conduct and its increasing risk to the public); United States v. Myers, 589

13

F.3d 117, 126 (4th Cir. 2010) (upward departure based on defendant's criminal history, including unscored convictions, and recidivism was reasonable); United States v. Evans, 526 F.3d 155, 158, 163-64, 166 (4th Cir. 2008) (upward departure reflecting more than a 300% deviation from advisory guidelines range supported by defendant's extensive criminal history of recidivism, lenient punishments, and substantial harm to victims).

Even had the sentencing court failed to utilize a proper analysis for the upward departure, any such error would be harmless because the upward variance based on the § 3553(a) factors justified the sentence imposed. See United States v. Evans, 526 F.3d 155, 165 (4th Cir. 2008).[4] See also Rivera-Santana, 668 F.3d at 104; United States v. Grubbs, 585 F.3d 793, 804 (4th Cir. 2009) (relying on district court's discussion of § 3553(a) factors to affirm sentence as reasonable variance).

The district court expressly noted that it would have "impose[d] the same sentence as a variance sentence" for the reasons explained above, as well as for those noted during the

---

[4] As this Court recently observed, "the practical effects of applying either a departure or a variance are the same." Diosdado-Star, 630 F.3d at 365. See also Evans, 526 F.3d at 164-65. "[T]he method of deviation from the Guidelines range—whether by a departure or by varying—is irrelevant so long as at least one rationale is justified and reasonable." Diosdado-Star, 630 F.3d at 365

14

sentencing hearing concerning section 3553(a). See Grubbs, 585 F.3d at 804 (concluding that variance sentence "is procedurally reasonable [where] the district court adequately explain[s] its sentence on alternative grounds" by reference to § 3553(a) factors). Our review of the district court's application of the § 3553(a) factors to Blakeney's circumstances persuades us that the variant sentence imposed upon him was not unreasonable. See Grubbs, 585 F.3d at 804–05; Gall, 552 U.S. at 51 (in reviewing a variance for reasonableness, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance"); United States v. Pauley, 511 F.3d 468, 474 (4th Cir. 2007); Evans, 526 F.3d at 160.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

15

GREGORY, Circuit Judge, concurring in the judgment:

I concur in the result reached by the majority, as it is the outcome militated by our precedent. I write separately, however, to lament on how formalistic and hollow our review of district court sentencing has become. While I recognize that the district court remains in the best position "'to decide the issue in question,'" Koon v. United States, 518 U.S. 81, 98-99 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 559-560 (1988)), this discretion is not without limits, and must be curbed to achieve the time-honored objectives of fair and consistent sentencing. See United States v. Booker, 543 U.S. 220, 263-264 (2005) (noting that, despite tension with the need to address individual circumstances, substantive review aims to "avoid excessive sentencing disparities" and "iron out sentencing differences").

As I cautioned in United States v. Evans, 526 F.3d 155, 167 (4th Cir. 2008) (Gregory, J., concurring), "the words 'abuse of discretion' cannot be a legal incantation invoked by appellate courts to dispel meaningful substantive review of a district court's sentence." Yet, as recited by the majority, to depart from the guidelines, district court judges "need only 'set forth enough to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis' for its decision." Ante at 7 (citing United States v. Diosdado-

16

_Star_, 630 F.3d 359, 364 (4th Cir. 2011)) (emphasis added). Thus, district court judges can render our review moot by simply providing a formulaic recitation of the 18 U.S.C. § 3553(a) factors, as well as reasons for their departure -- even if, for good reason, we explicitly disagree with them. With that said, I agree that Blakeney's remarkable criminal history justifies the district court judge's decision to depart in the instant case; however, such an extensive departure from both the sentencing guidelines and the government's recommendation should not go unobserved.

In the case at hand, the district court sentenced Blakeney to ten years' imprisonment -- despite the Government's request for only five years (which was already fourteen months in excess of the sentencing range's maximum). Arguably, the district court's reasoning could be extended to justify any sentence up to the statutory maximum of twenty years. Such uncertainty flies in the face of avoiding sentencing disparities and the general proposition of fairness. As candidly indicated by Blakeney's counsel during oral argument, uncertainty undermines an attorney's role as advocate, as it encumbers the ability to adequately prepare clients for sentencing, putting the attorney at risk of claims for ineffective assistance of counsel.

17

Overall, we cannot lose sight that appellate review of sentencing is becoming "a mere formality, used by busy appellate judges only to ensure that busy district judges say all the right things when they explain how they have exercised" their discretion. Booker, 543 U.S. at 313 (Scalia, J., dissenting). Going forward, district courts must be wary of departure, ensuring that non-guideline sentences are "sufficient, but not greater than necessary" to satisfy the purposes of § 3553(a)(2). In the same vein, our review must be given teeth to ensure that the discretion of district court judges -- which is not absolute -- remains subject to meaningful appellate review.