PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

         *Plaintiff-Appellee,*

v.

ROBERTO DIOSDADO-STAR, a/k/a
Robert Guerrera, a/k/a S. P.
Guitierez-Llanas, a/k/a Steve
Collins, a/k/a Robert Star, a/k/a
Jorge Villereal-Julio, a/k/a Esteban
Gonzalez-Rivera, a/k/a Jorge
Jorge-Villareal, a/k/a Roberto
Herrera,

         *Defendant-Appellant.*

No. 09-4723

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(5:08-cr-00292-F-1)

Argued: December 10, 2010

Decided: January 24, 2011

Before AGEE and DAVIS, Circuit Judges, and
David A. FABER, Senior United States District Judge for
the Southern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Agee wrote the opin-
ion, in which Judge Davis and Senior Judge Faber concurred.

**COUNSEL**

**ARGUED**: Stephen Clayton Gordon, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Raleigh, North Carolina, for
Appellant. Ethan A. Ontjes, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appel-
lee. **ON BRIEF:** Thomas P. McNamara, Federal Public
Defender, Raleigh, North Carolina, for Appellant. George E.
B. Holding, United States Attorney, Anne M. Hayes, Assis-
tant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appel-
lee.

---

**OPINION**

AGEE, Circuit Judge:

Roberto Diosdado-Star ("Diosdado-Star") pled guilty to
one count of being found in the United States after having
been excluded, deported, and removed from the United States,
in violation of 8 U.S.C. § 1326(a), and one count of possess-
ing a counterfeit United States Resident Alien card, in viola-
tion of 18 U.S.C. § 1546(a). Diosdado-Star appeals his
sentence of 84 months' imprisonment. For the following rea-
sons, we affirm the district court's judgment.

I.

Diosdado-Star, a citizen of Mexico, unlawfully entered the
United States in 1991. In 2002, he was arrested in Texas for
an immigration violation and deported to Mexico, but ille-
gally returned without detection to North Carolina during the
same month.

In 2006, Immigration and Customs Enforcement ("ICE")
launched an internal investigation of a Border Patrol Agent

("BPA") named Roberto Herrera, who was suspected of misconduct. During the course of the investigation ICE agents discovered that Diosdado-Star had been using the pseudonym "Roberto Herrera," along with several other aliases, and fraudulently representing himself to be a BPA. Diosdado-Star was suspected to have done so "in an effort to defraud unsuspecting Hispanic aliens into believing that either they or their family members could obtain legitimate immigration documents for large amounts of U.S. currency." (J.A. 138). Diosdado-Star never supplied any such documents to the victims, although he took substantial payments from them as well as their "Social Security cards, birth certificates, driver's licenses, passports, Permanent Resident Alien cards, marriage licenses, tax returns, pay stubs, and utility bills." (J.A. 138).

As a result of this investigation, ICE agents arrested Diosdado-Star at his residence in Raleigh in 2008. During a search of his home, agents discovered photos on a laptop computer of Diosdado-Star wearing a BPA uniform, $3,000 in cash, and "Social Security cards, Mexican birth certificates, Texas driver's licenses/identification cards, Mexican passports, Permanent Resident Alien cards, Mexican marriage licenses, tax returns, pay stubs, and utility bills" belonging to five different victims. (J.A. 139). During a search of Diosdado-Star's vehicle, agents discovered a fraudulent Permanent Resident Alien card and a fraudulent Social Security card. During a search of Diosdado-Star's garage, agents found identification information relating to "an additional 51 victims," and discovered that Diosdado-Star had "deposited approximately $177,000 in U.S. currency into his various bank accounts between February 2006 and September 2008" and "spent large amounts of money on vehicles, car accessories, and large appliances for his home," (J.A. 139), even though he had no record of employment. Diosdado-Star "admitted [to ICE agents] to being a citizen of Mexico who was previously deported . . . [and] admitted to illegally reentering the United States . . . and to posing as a BPA to defraud illegal aliens." (J.A. 139).

Diosdado-Star was charged with and pled guilty to (1) being found in the United States after being deported, for which the statutory maximum term of imprisonment is two years, and (2) possessing a counterfeit resident alien card, for which the statutory maximum term of imprisonment is ten years. The Presentence Investigation Report ("PSR") calculated his Guidelines range for the two charges to be a total of four to ten months' imprisonment, but noted that a departure may be warranted under either U.S.S.G. § 5K2.21, Dismissed and Uncharged Conduct, or U.S.S.G. § 4A1.3, Inadequacy of Criminal History Category, due to his "additional criminal conduct related to impersonating a federal law enforcement officer to defraud numerous illegal immigrants." (J.A. 147).

At the sentencing hearing, the district court decided to "vary in the sentencing," (J.A. 113), based on the following factors: Diosdado-Star (1) had a "criminal record consist[ing] of four prior convictions to obtain property by false pretenses," (J.A. 112); (2) "calculated to deceive . . . people . . . [who] were very vulnerable because they did not have the right to come to the United States," (J.A. 112); (3) "ha[d] acquired substantial amounts of money," "purchased two vehicles and an extensive array of home furnishings," "had cash in the amount of $3,900 seized from him during the first search of the residence although he has no record of employment," and "$25,000 was turned over by his family after his arrest," (J.A. 112-13); (4) "was on probation when he committed the instant offense"; and (5) "has a devoted family [in the United States], which gives him a strong motivation to recidivate and re-enter the United States." (J.A. 113).

On the basis of these factors as well as "the advisory guidelines and those in 18 U.S.C. § 3553(a)," the district court sentenced Diosdado-Star to 24 months' imprisonment for Count 1 and 60 months' imprisonment for Count 2, to run consecutively for a total of 84 months' imprisonment. (J.A. 113). Diosdado-Star timely filed an appeal from the judgment of the

district court and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

On appeal, Diosdado-Star argues that his sentence is both procedurally and substantively unreasonable. He contends that the district court procedurally erred by failing to "first address[ ] a departure before imposing a purportedly non-guidelines sentence." (Appellant's Br. 17). In support of this contention, he relies on language in this Court's decision in *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), for the proposition that "when selecting a sentence outside of the correctly-calculated guideline range, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law." (Appellant's Br. 15) (quotations omitted). Diosdado-Star asserts *Moreland* requires "that a court first look to the guidelines' departure provisions before varying," (Appellant's Br. 16), and that this require-ment was not overruled by the Supreme Court's subsequent decision in *Gall v. United States*, 552 U.S. 38 (2007). Diosdado-Star further contends that he was prejudiced by the district court's decision to impose a variance rather than a departure because he "had no opportunity to argue against being placed in a higher criminal history category." (Appel-lant's Br. 19).

Diosdado-Star also asserts that his sentence is substantively unreasonable because "the extent of the variance . . . lacked the 'compelling' reasons required to justify sentences that substantially deviate from the advisory guideline range." (Appellant's Br. 20-21).

This Court reviews a sentence for reasonableness, applying an abuse of discretion standard. *Gall*, 552 U.S. at 51. In reviewing the reasonableness of a sentence, "[w]e must 'first ensure that the district court committed no significant proce-dural error . . . .'" *United States v. Morace*, 594 F.3d 340, 345

(4th Cir. 2010) (quoting *Gall*, 552 U.S. at 51). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. "If we find no significant procedural error, we must 'then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Morace*, 594 F.3d at 345-46 (quoting *Gall*, 552 U.S. at 51).

## A.

Diosdado-Star relies heavily on our decision in *Moreland* to support his argument that the district court procedurally erred by imposing a variant sentence instead of first applying applicable departure provisions from the Guidelines. In *Moreland* we stated that,

> in imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors. In doing so, the district court should *first* look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may *then* elect to impose a non-guideline sentence (a "variance sentence").

437 F.3d at 432 (emphasis added) (internal citations and quotations omitted). Based on the foregoing language that the district court should "first" look to a departure provision before varying, Diosdado-Star contends the district court procedurally erred by imposing the variant sentence without proceeding first through the departure provisions.[1]

Accordingly, unless there is "a superseding contrary decision of the Supreme Court," *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 840-41 (4th Cir. 1990), Diosdado-Star argues we must hold that the district court erred by varying before considering any applicable departures. However, for the reasons discussed below, the Supreme Court's decisions in *United States v. Rita*, 551 U.S. 338 (2007), and *Gall* implicitly overruled any precedential value the cited language in *Moreland* may have had.

In *Rita*, the Supreme Court responded to the then-existing circuit split regarding the propriety of "the use of a presumption of reasonableness for within-Guidelines sentences." 551 U.S. at 346. Although the *Rita* Court ultimately held that a reviewing appellate court may apply a presumption of reasonableness to a within-Guidelines sentence, the Court also emphasized the deference owed to sentencing courts' decisions. *Cf. id.* at 354-55.

The *Rita* Court did not indicate either a difference or preference between departures or variances, or comment upon the precise procedure of applying either. Instead, the Court noted the interrelationship between the two, explaining that "it is fair to assume that the Guidelines, insofar as practicable,

---

[1]There is a strong argument the court's observation in *Moreland* to "first look to whether a departure is appropriate" is dicta because that case did not involve an issue as to whether a choice between a departure or variance was relevant to the sentencing decision made by the district court. In any event, we need not resolve whether the recited statement Diosdado-Star relies on is dicta in view of the clear authority from the Supreme Court and this Court which resolves the issue before us.

reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 350. In fashioning an appropriate sentence, the *Rita* Court noted that the district court "may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," *or* "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations" *or* "because the case warrants a different sentence regardless." *Id.* at 351; *see also id.* at 350 ("The sentencing courts, applying the Guidelines in individual cases may depart (*either* pursuant to the Guidelines *or*, since *Booker*, by imposing a non-Guidelines sentence)." (emphasis added)). Thus, *Rita* recognized that a sentencing court has flexibility in fashioning a sentence outside of the Guidelines range, and ultimately requires only that a district court "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* at 356.

In *Gall*, the Supreme Court delineated in more detail the proper procedure for a district court to follow in sentencing, again stressing the deference owed to district courts' sentencing decisions. *See, e.g.*, 552 U.S. at 51-52, 56. Of course, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49. However, "[t]he Guidelines are not the only consideration . . . . Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. The *Gall* Court used the terms "variance" and "departure" interchangeably, directing that, if the district court "decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the *variance*. We find it uncontroversial

that a major *departure* should be supported by a more significant justification than a minor one." *Id.* at 50 (emphasis added).

Furthermore, both *Gall* and *Rita* make clear that the practical effects of applying either a departure or a variance are the same. Together, the decisions direct that any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard. *See Rita*, 551 U.S. at 350, 354-55; *Gall*, 552 U.S. at 46, 49, 51. Furthermore, either when applying a departure provision or varying from the Guidelines range, the district court must give "serious consideration to the extent" of the departure or variance, and "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 46, 50 (citation omitted). Therefore, the method by which the district court deviates from the Guidelines range does not alter (1) the review in which the courts of appeals must engage, or (2) the justification the district court must provide.

We effectively acknowledged that *Gall* and *Rita* overruled any effect of the recited language from *Moreland* in *United States v. Evans*, 526 F.3d 155 (4th Cir. 2008). In *Evans*, the district court relied both on a variance and two departure provisions to "justif[y] its substantial upward deviation from the advisory Guidelines range." 526 F.3d at 164. On appeal, Evans argued that "neither of these Guidelines [departure] provisions permits an upward deviation here, and therefore [this Court] must find the sentence unreasonable." *Id.*

However, we held that, "even if Evans is correct and the Guidelines themselves do not sanction the deviation . . ., the sentence remains reasonable because it properly reflects the § 3553(a) considerations." *Id.* Citing both *Gall* and *Rita*, we reasoned:

> [A]lthough adherence to the advisory Guidelines departure provisions provides *one way* for a district court to fashion a reasonable sentence outside the Guidelines range, it is *not* the only way. Rather, after calculating the correct Guidelines range, if the district court determines that a sentence outside that range is appropriate, it may base its sentence on the Guidelines departure provisions *or* on other factors so long as it provides adequate justification for the deviation.

> When reviewing the sentence selected by the district court, regardless of whether the court deviates from the advisory Guidelines range because of a Guidelines-sanctioned departure, *or* because of one or more § 3553(a) factors, *or* because of some other reason-that is, no matter what provides the basis for a deviation from the Guidelines range-we review the resulting sentence only for reasonableness.

> . . .

> When, as here, a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just *one* of these rationales. Picking through the district court's analysis in that manner would be wholly inconsistent with the Supreme Court's directives to examine the "totality of the circumstances," and to defer to the considered judgment of the district court.

*Id.* at 164-65. (citations omitted). By so holding, we found that the method of deviation from the Guidelines range—whether by a departure or by varying—is irrelevant so long as at least one rationale is justified and reasonable.

Accordingly, as recognized in *Evans*, we find that *Gall* and *Rita* were "superseding contrary decision[s] of the Supreme Court" that implicitly overruled the effect, if any, of the language in *Moreland* relied on by Diosdado-Star, which we recognized in *Evans*. *See Busby*, 896 F.2d at 840-41. Thus, we are not bound by the language in *Moreland* that "the district court should first look to whether a departure is appropriate" before varying.[2] *Moreland*, 437 F.3d at 432. Accordingly, *Gall*, *Rita*, and *Evans* foreclose Diosdado-Star's argument that the district court procedurally erred in deviating from the Guidelines range.[3]

### B.

Having determined that Diosdado-Star's sentence is procedurally reasonable, we next turn to his claim that his sentence is substantively unreasonable. In considering the substantive reasonableness of a sentence, we must determine "whether the sentence was reasonable-*i.e.*, whether the District Judge abused his discretion in determining that the § 3553(a) factors supported [the sentence] and justified a substantial deviation from the Guidelines range." *Gall*, 552 U.S. at 56. We also must

> take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . . [I]f the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) fac-

---

[2]We offer no comment on the observation of several other circuit courts of appeals that the departure provisions of the Guidelines are obsolete. *See, e.g.*, *United States v. Mohamed*, 459 F.3d 979, 985-87 (9th Cir. 2006); *United States v. Arnaout*, 431 F.3d 994, 1003-04 (7th Cir. 2005).

[3]We note that Diosdado-Star made no argument that the district court erred in any way in calculating the advisory Guidelines range.

> tors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Id.* at 51. This deference is due in part because "[t]he sentencing judge is in a superior position to find facts and judge their import [and] [t]he judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* (quotations omitted); *see also Rita*, 551 U.S. at 357-58 (the district court also "has access to, and greater familiarity with, the individual case and the individual defendant before [the court] than the Commission or the appeals court").

Although the district court's justification for the sentence must "support[ ] the degree of the variance," and "a major departure should be supported by a more significant justification than a minor one[,] . . . a district court need not justify a sentence outside the Guidelines range with a finding of extraordinary circumstances." *Evans*, 526 F.3d at 161 (quotations and citation omitted). Reviewing courts must be mindful that, regardless of "the individual case," the "deferential abuse-of-discretion standard of review . . . applies to all sentencing decisions." *Gall*, 552 U.S. at 52.

In the case at bar, the district court sentenced Diosdado-Star to a term of imprisonment in excess of six years above the top of the recommended Guidelines range. While this increase is certainly substantial, it does not constitute an abuse of discretion based on the totality of the circumstances. The district court properly considered and fully explained its decision pursuant to the factors set forth in 18 U.S.C. § 3553(a), particularly factor §3553(a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant." As the district court noted, the extent and seriousness of Diosdado-Star's conduct was considerable. Diosdado-Star

admitted to impersonating a BPA in furtherance of his scheme to perpetrate a fraud upon many vulnerable victims. He also gleaned a substantial financial profit from the fraud. Furthermore, the district court noted that Diosdado-Star's likelihood of recidivism was high, thus recognizing the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). Therefore, we conclude that we must "give[ ] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence" of 84 months' imprisonment. *Gall*, 552 U.S. at 59-60.

## III.

For the foregoing reasons, we hold that the district court did not abuse its discretion in imposing the sentence. Accordingly, the judgment of the district court is

*AFFIRMED*.