**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 12-4062
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES EDWARD WHITLEY,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington. Louise W. Flanagan,
District Judge. (7:10-cr-00105-FL-1)

_____

Argued: February 1, 2013            Decided: September 9, 2013

_____

Before GREGORY and KEENAN, Circuit Judges, and Robert E. PAYNE,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Senior Judge Payne
wrote a separate opinion concurring in part and concurring in
the judgment.

_____

**ARGUED:** James Ryan Hawes, EDMISTEN & WEBB, Raleigh, North
Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE
UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.
**ON BRIEF:** Thomas G. Walker, United States Attorney, Kristine L.
Fritz, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Edward Whitley pleaded guilty to charges of wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1957, based on his activities in conducting a fraudulent investment scheme. The district court found that under the United States Sentencing Guidelines (the guidelines), Whitley's advisory range of imprisonment was 57 to 71 months on each count. Upon determining that sentences within the guidelines range would be insufficient, the court imposed concurrent sentences of 120 months' imprisonment on the two counts.

On appeal, Whitley argues that the district court committed procedural error in its sentencing determination because the court did not specify whether it was imposing departure-based sentences under the guidelines, or instead was imposing variant sentences based on the factors set forth in 18 U.S.C. § 3553(a). Whitley further argues that the sentences are substantively unreasonable because they are excessive. Upon our review, we conclude that the district court did not commit procedural or substantive error as alleged. Accordingly, we affirm the district court's judgment.

3

I.

In September 2010, a grand jury issued a twenty-count indictment charging Whitley with six counts of wire fraud and fourteen counts of money laundering. These charges resulted from a government investigation revealing that Whitley engaged in a three-year scheme of defrauding friends, family members, and acquaintances (collectively, the victims), who had invested their money with Whitley. Whitley solicited funds from the victims by representing that he was in the business of brokering purchase order factoring contracts.[1] Whitley told the victims that he had contracts with certain companies, that the victims' funds would be invested in those companies, and that the victims would receive their return of capital after the expiration of the companies' factoring contracts. Whitley provided the victims with promissory notes specifying both interest rates and due dates.

Whitley did not use any of the funds he received from the victims to invest in a factoring business. Instead, Whitley used the funds to further his fraudulent scheme and for his personal use. For instance, as is typical of a Ponzi scheme,

_____

[1] A "purchase order factoring contract" is needed when a supplier requires that a buyer pay for goods by cash on delivery, but the buyer wants to purchase the goods on 30 to 60 day terms. The purchase order contractor agrees to pay the supplier upon delivery of the goods, which enables the buyer to delay payment for a specified period of time.

Whitley used some of the funds he received from later investors to pay initial investors interest on the money they had provided, thereby creating the impression that the investment was successful. Whitley also used some of the proceeds from his scheme to pay off a construction loan for his secondary residence, a beach house on Bald Head Island, North Carolina. Additionally, Whitley used some funds provided by the victims to take beach vacations to the Caribbean and ski trips to Colorado. Whitley's scheme affected at least 25 victims and resulted in a collective loss of about $7 million.

Whitley and the government entered into a plea agreement, under which Whitley agreed to plead guilty to one count of wire fraud and one count of money laundering in exchange for the government agreeing to dismiss the other 18 counts alleged in the indictment. The parties also stipulated in the plea agreement that the amount of loss was between $2.5 million and $7 million for purposes of Whitley's advisory guidelines sentencing range. After the district court accepted Whitley's guilty plea, the United States Probation Office prepared Whitley's presentence investigation report (PSR), in which the

probation officer calculated an advisory guidelines range of 57 to 71 months' imprisonment.[2]

At Whitley's sentencing hearing, the district court adopted the probation officer's calculations concerning Whitley's advisory guidelines range. The district court also heard testimony from six victims concerning the impact of Whitley's fraudulent scheme on their lives. Additionally, counsel from the government read statements from several other victims who were unable to attend the hearing.

The evidence presented at the sentencing hearing showed that Whitley's conduct created significant emotional consequences for some victims, contributed to the demise of a marriage, and impaired some of the victims' retirement and education plans. The victims' statements and testimony also described Whitley's tenacious and persistent pursuit of investment funds, the manner in which Whitley lied to the victims when they inquired about their investments, and Whitley's lack of remorse toward them and his failure to attempt to repay the victims for their losses. The government asked that the district court sentence Whitley to a term of imprisonment "at the upper end" of his guidelines range, while

---

[2] This range was calculated based in part on the parties' agreement concerning the amount of loss, which resulted in a total offense level of 25 under the guidelines.

6

Whitley's counsel requested sentences "within the guideline[s] range."

After receiving this evidence and considering the parties' arguments, the district court sentenced Whitley to a term of imprisonment of 120 months on each count, to be served concurrently. The court stated that it considered Whitley's advisory guidelines range and the sentencing factors set forth in 18 U.S.C. § 3553(a), and explained that the court did not think "that the advice of the guidelines reflects the [§ 3553(a)] factors fully[,] [m]ost particularly, the need to promote respect for the law and to discourage this type of criminal conduct." The court noted that Whitley "preyed on people who had reason to trust [him]," that Whitley's tactics were aggressive and persistent, and that the impact of Whitley's conduct was "overwhelming." The court also observed that Whitley continued to conduct his fraudulent scheme even after becoming aware that the government was investigating his activities. Near the end of the hearing, the district court provided further explanation why the court had "gone above the guideline[s] range," stating that:

> [T]he guideline[s] sentence does not accomplish [sic] in this case, given the pervasive nature of the scheme and the persons upon whom [Whitley] preyed and the impact upon those individuals, for all these reasons, also including what appears to be a lack of penitence on the part of [Whitley] where there's been [an] opportunity . . . given [to] him by the Court to begin

7

to collect funds.  I'm compelled to conclude that he's a very dangerous person and that there's a complete lack of respect for the law.

In announcing the sentences from the bench, the district court mentioned the § 3553(a) factors on several occasions but did not use either the term "variance" or the term "departure" in explaining the sentences.  Notably, Whitley's counsel did not ask the court during the sentencing hearing to specify whether the court was departing from the advisory guidelines range or instead was imposing variant sentences.  After the court issued its judgment and written statement of reasons, Whitley timely filed a notice of appeal.

II.

A.

We first address Whitley's challenge to the procedural reasonableness of his sentences.  As a general matter, we review a district court's imposition of a sentence, whether within or outside a defendant's advisory guidelines range, under a deferential abuse-of-discretion standard.  Gall v. United States, 552 U.S. 38, 41 (2007).  The government, however, asserts that Whitley's procedural reasonableness challenge is subject to review only for plain error, because Whitley did not raise in the district court the argument he presents here.  See

8

United States v. Olano, 507 U.S. 725, 732-34 (1993) (discussing plain error standard of review).

We need not determine whether the more rigorous plain error standard applies in this case, because we conclude that the district court did not commit procedural error as alleged by Whitley, plain or otherwise. Whitley's sole contention concerning procedural error is that the district court erred by "fail[ing] to specify at the sentencing hearing whether [the court] departed or varied in doubling the advisory guidelines [range]." Br. of Appellant at i, 10. Whitley concedes that under our precedent, a district court is not required to "first look to whether a departure is appropriate before varying." See United States v. Diosdado-Star, 630 F.3d 359, 366 (4th Cir. 2011) (citation omitted). However, Whitley contends that a new sentencing hearing is required because the district court allegedly failed to state whether it varied or departed in determining the 120-month sentences, and thus that the court violated the general principle stated in Diosdado-Star that a court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id. at 365 (citation omitted); see Gall, 552 U.S. at 51 (listing ways in which a district court may commit procedural error, including by failing to adequately explain the chosen sentence).

We reject Whitley's argument because it is based on his mistaken assertion that there is "no way to determine how the [district] court arrived at the 120 month sentence[s]." Br. of Appellant at 12. The record of the sentencing proceedings refutes Whitley's argument, and shows that the district court imposed variant sentences, rather than departure-based sentences.

The term "departure" has a unique meaning under the guidelines, and "refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." Irizarry v. United States, 553 U.S. 708, 714 (2008). Here, although the PSR identified a possible basis for departure under U.S.S.G. § 2B1.1(b)(1),[3] the district court did not focus either on Whitley's offense level or on any fees or other similar costs incurred. Thus, we conclude that the sentences were not imposed on the basis of this guidelines provision. Nor did the district court give the parties notice that the court was considering the imposition of departure-based sentences for any other reason, as

---

[3] Under Application Note 19(A)(iii) to U.S.S.G. § 2B1.1(b)(1), a district court may make an upward departure to a defendant's guidelines range in cases in which the offense level "substantially understates the seriousness of the offense," on account of the offense involving a substantial amount of interest, finance charges, late fees, penalties, or "other similar costs, not included in the determination of loss." The PSR mentioned this provision, but the probation officer did not make a recommendation concerning whether Whitley's sentence should be increased based on such a departure.

10

would be required under Rule 32(h) of the Federal Rules of Criminal Procedure.

By contrast, "variant" sentences are drawn from consideration of the sentencing factors set forth in § 3553(a). See Irizarry, 553 U.S. at 714-15; see also United States v. Rivera-Santana, 668 F.3d 95, 100 n.6 (4th Cir. 2012) (discussing the difference between a departure, a sentence imposed by reference to the defendant's guidelines range, and a variance, "a non-Guidelines sentence" that is justified on the basis of the § 3553(a) factors) (citation omitted). During the sentencing hearing, the district court referred frequently to certain factors set forth in § 3553(a) in explaining Whitley's sentences. Moreover, the written statement of reasons issued by the district court specified that the court imposed sentences "outside the advisory sentencing guideline system,"[4] and that "the court varied upwardly to a sentence of 120 months['] imprisonment." (Emphasis added.) Based on these statements in the record, we easily conclude that the district court imposed variant sentences, not departure-based sentences. Accordingly,

---

[4] The statement of reasons form includes a "check box" that would allow a court to indicate departure-based sentences. However, the district court did not mark that box denoting departure-based sentences, and instead marked the box indicating sentences based outside the guidelines system.

11

we hold that Whitley's procedural reasonableness claim lacks any merit.

In reaching this conclusion, we additionally observe that Whitley has not challenged the validity of our holding in Diosdado-Star that a district court is not required to consider whether any departures under the guidelines are applicable before imposing a variant sentence. See 630 F.3d at 365-66. At oral argument in this case, however, this Court raised the question whether the November 2010 amendments to U.S.S.G. § 1B1.1[5] have undermined the above holding in Diosdado-Star. Nevertheless, we do not answer that question here, because Whitley waived any such argument due to his failure to raise it in his brief to this Court. See Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 604 n.4 (4th Cir. 2010) (holding that the appellant waived an argument by not raising it in the opening brief, even though that issue was discussed by the panel and the parties during oral argument); see also United States v.

---

[5] The current iteration of that commentary section, titled "Application Instructions," was enacted after appellate briefing in Diosdado-Star but before oral argument and the issuance of the opinion in that case. The Application Instructions provide that district courts "shall determine the kinds of sentence and the guideline range as set forth in the guidelines . . . by applying the provisions of this manual in the following order," and lists the consideration of any departures from the guidelines before listing the consideration of the § 3553(a) factors. The parties in Diosdado-Star did not bring to this Court's attention this revision to U.S.S.G. § 1B1.1.

Hudson, 673 F.3d 263, 268 (4th Cir. 2012) (holding that issues not raised in opening brief are waived).  Moreover, Whitley cites with approval in his brief the very proposition in Diosdado-Star that this Court raised during oral argument in Whitley's appeal, namely, that "a district court is not required to 'first look to whether a departure is appropriate before varying.'"  Br. of Appellant at 10 (quoting Diosdado-Star, 640 F.3d at 365-66).  Accordingly, we hold that Whitley's reliance on Diosdado-Star and his failure to challenge its vitality in light of amended U.S.S.G. § 1B1.1 precludes consideration of that issue here.

B.

Finally, we determine whether the district court abused its discretion in sentencing Whitley to concurrent terms of 120 months' imprisonment, sentences well above his advisory guidelines range.  In conducting a review of alleged substantive sentencing error, we review the sentences imposed for reasonableness, regardless whether they were based on the guidelines or were variant sentences.  United States v. Evans, 526 F.3d 155, 164 (4th Cir. 2008).  When reviewing sentences that are outside the defendant's advisory guidelines range, imposed either by departure or by variance, we consider whether the district court "acted reasonably both with respect to its decision to impose such a sentence and with respect to the

13

extent of the divergence from the sentencing range." United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). In undertaking this analysis, we "must defer to the trial court and can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court." Evans, 526 F.3d at 160 (emphasis omitted).

In sentencing Whitley on the basis of the § 3553(a) factors, the district court observed the "pervasive nature" of Whitley's fraudulent scheme, the manner in which he had perpetuated the fraud, and his lack of remorse. The court also considered the testimony of Whitley's victims, who discussed the impact of Whitley's fraudulent scheme on their lives. See, e.g., id. at 163 (discussing with approval the district court's consideration of the victims' statements in affirming a sentence that was more than four times as much as the upper end of the defendant's advisory guidelines range). Most notably, the district court discussed the need for sentences in excess of the guidelines range to protect the public, because when Whitley was "on notice of [the] investigation and notice of wrongdoing [he] continued to prey on others." The district court also noted that substantial terms of imprisonment were justified by the need to provide adequate deterrence regarding similar criminal conduct and to promote respect for the law. After reviewing

14

these reasons provided by the district court, as well as the entire sentencing record and the parties' arguments, we conclude that Whitley's concurrent sentences of 120 months' imprisonment are not substantively unreasonable.

## III.

For these reasons, we affirm the district court's judgment.

AFFIRMED

PAYNE, Senior District Judge, concurring in part and concurring in the judgment:

I agree with the majority that Whitley's sentence is substantively reasonable. However, for the reasons that follow, I submit that Whitley's asserted procedural error should be reviewed under the plain error standard; that there was plain error; but that the error did not affect Whitley's substantial rights.

I.

Whitley and the government disagree about the applicable standard of review of the alleged procedural error. Whitley contends that the abuse of discretion standard applies. The government contends that the plain error standard of review controls because the challenges raised by Whitley are presented for the first time on appeal.

In United States v. Lynn, 592 F.3d 572, 576 (4th Cir. 2010), the Court held "that plain-error review applies when a party lodges an objection to the sort of procedural sentencing error at issue here [inadequate explanation of sentencing] for the first time on appeal." Id. at 577. See United States v. Hargrove, 625 F.3d 170, 183-84 (2010) (pointing out that Lynn called for plain error review when a procedural sentencing error is raised for the first time on appeal). Also, in Lynn, the Court explained how a party can preserve a claim of procedural

16

sentencing error. The Court stated that, "[b]y drawing arguments from § 3553 for a sentence different than the one ultimately imposed, an aggrieved party sufficiently alerts the district court of its responsibility to render an individualized explanation addressing those arguments, and thus preserves its claim." Id. at 578 (emphasis added). Later, in United States v. Boulware, 604 F.3d 832, 838 (4th Cir. 2010), citing Lynn, the Court held that "arguments made under § 3553(a) for a sentence different than the one that is eventually imposed are sufficient to preserve claims that the district court erred in not adequately explaining its rejection of the sentencing arguments." (emphasis added).

II.

In Gall v. United States, 552 U.S. 38, 40 (2007), the Supreme Court identified several kinds of procedural errors that can occur at sentencing. Among them was "failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51. Whitley contends that:

> [t]he district court procedurally erred when it failed to specify at the sentencing hearing whether it departed or varied in imposing a sentence that doubled the guideline range. This error resulted in a failure to adequately explain its decision to impose the 120 month sentence and, therefore, the sentence must be vacated.

17

Appellant's Brief, at 10. Thus, Whitley raises the kind of procedural error that is identified in the last phrase of the exemplary list of procedural errors provided in Gall.

To decide whether Whitley preserved that error, it is necessary to determine whether, in the sentencing proceedings, Whitley drew "'arguments from § 3553 for a sentence different than the one ultimately imposed . . . .'" United States v. Powell, 650 F.3d 388, 395 (4th Cir. 2011) (citation omitted) (emphasis in original); Boulware, 604 F.3d at 838; Lynn, 592 F.3d at 578. The arguments necessary to preserve an error of this sort can be set forth in written sentencing positions filed before the sentencing hearing or in arguments made at the hearing. Neither Whitley nor the government filed a written pre-sentencing submission. Therefore, the record at the sentencing hearing must be examined to see whether there Whitley drew any argument from § 3553(a) for a sentence that was different than the one the court ultimately imposed. The record demonstrates that he did not.

In his sentencing argument, Whitley's counsel made four points: (1) that Whitley had made a bad decision for which he had "accepted responsibility" and "entered a plea agreement;" (2) that Whitley had suffered in his personal life for that bad decision and had been forced into bankruptcy; (3) that Whitley's

18

wife had divorced him and his children had "alienated him;" and (4) that "his property has been foreclosed on." Having made those points, counsel then said, "we ask that you sentence him to a sentence within the guideline range."[1]

Quite clearly, Whitley's arguments for a within-Guideline sentence cannot be said to be drawn from the factors in §§ 3553(a)(2)-(7). That leaves § 3553(a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant." Whitley's sentencing points do not refer to "the nature and circumstances of the offense." Nor can the four points raised in Whitley's sentencing argument be fairly related to either his history or characteristics. Rather, in one way or another, each point makes note of how the offense has affected Whitley (points (2)-(4)) or recites a neutral fact, acceptance of responsibility by pleading guilty, (point (1)).

The oblique references to the effects of Whitley's crime on him and to the fact of a guilty plea, like the oblique references in United States v. Powell, do not "'sufficiently alert the district court of its responsibility to render an individualized explanation addressing those arguments' under § 3553" (quoting Lynn, 592 F.3d at 578). In sum, Whitley did not

---

[1] Counsel also asked that Whitley be confined in a specific nearby prison and that he be allowed to "self-report" to begin service of the sentence.

"'draw[] arguments from § 3553 for a sentence different than the one ultimately imposed,'" and thus, even under the quite lenient standard for preservation of such an error that the Court has adopted, Whitley did not preserve the procedural error that he now asserts

## III.

To demonstrate plain error, Whitley is obligated to establish that: (1) the trial court erred, (2) the error is clear and obvious, and (3) the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 732-34 (1993); Hargrove, 625 F.3d at 184. If Whitley discharges that responsibility, the Court has discretion to recognize the error, but need not do so unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (quotations and alterations omitted); Hargrove, 625 F.3d at 184.

Whether an error is plain is judged "'at the time of appellate consideration.'" Henderson v. United States, ___ U.S. ___, 133 S. Ct. 1121, 1130 (2013) (citing Johnson v. United States, 520 U.S. 461, 468 (1997)). That is so even if the issue was previously unsettled. Id.

20

A.

Whitley argues that the procedural error occurred here because, in imposing the non-Guideline sentence, the district court did not specify whether the sentence was one chosen by way of departure or by way of variance. For that reason, says Whitley, the sentence was not adequately explained and meaningful appellate review has been foreclosed. To Whitley, the failure to articulate the mode of deviation from the Guidelines is of particular significance because the PSR identified a possible predicate for departure under U.S.S.G. § 2B.1(b)(1) and then outlined the findings necessary to depart thereunder, none of which did the district mention in imposing the sentence. Whitley also posits other possible bases for departure that the district court may have had in mind, but about which it did not remark. In perspective of the availability of these possible predicates for departure, it is argued that the district court's failure to express whether it was departing or varying constituted procedural error.

In support of his argument, Whitley cites United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011). However, Diosdado-Star actually is contrary to the substance of Whitley's position because it reasons from the premise that the terms "departure" and "variance" are interchangeable terms, id. at 364-65, a concept that is the polar opposite of Whitley's

21

position. And, Diosdado-Star holds that "the method by which the district court deviates from the Guidelines range does not alter (1) the review in which courts of appeals must engage, or (2) the justification the district court must provide," id. at 365, holdings that are antithetical to the core of Whitley's argument. Thus, although Whitley's argument pays lip service to Diosdado-Star, in substance, his argument proceeds from the premise that a non-Guideline sentence cannot be meaningfully explained or reviewed unless the district court actually articulates whether the methodology of departure or the methodology of variance is the means of deviating from the Guideline range, disposes of any possible ground for departure, and then keys its explanation of the imposed sentence to the chosen means of deviation.

Whitley's substantive position finds support in Irizarry v. United States, 553 U.S. 708, 714 (2008) which clarifies that, comments to the contrary in Gall notwithstanding, "variances" and "departures" are quite different kinds of sentencing modes. A variance is a sentence outside the advisory Guideline range, the imposition of which depends on an analysis of the factors in § 3553(a). A departure is a sentence outside the advisory Guideline range that depends on an analysis of the applicable

22

departure provisions in the Guidelines.  Irizarry, 553 U.S. at 714-15.[2]

Those differences are significant at the district court level because whether to depart requires a different analysis than that required in deciding whether to vary.  And, the differences are significant on appellate review, inter alia, because the standard of review for a departure is de novo, see Pepper v. United States, 131 S. Ct. 1229, 1244 (2011), whereas variances are reviewed for abuse of discretion.

Whitley's argument finds further support in the Guidelines, specifically Chapter One, Part B General Application Principles, § 1B1.1 Application Instructions, which provides:

> (a)  The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines by applying the provisions of this manual in the following order, except as specifically directed: [stating that the court shall determine the range as set forth in §§ 1B1.1(a)(1)-(7) by applying Chapters Two, Three, Four and Five, and then determine the sentencing requirements and options (8).]
>
> (b)  The court shall then consider Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence. See 18 U.S.C. § 3553(a)(5).

---

[2] A recent opinion of this Court, United States v. Rivera-Santana, 668 F.3d 95 (4th Cir. 2012), has taken the same view. Relying on Irizarry, the Court there explained that "[t]he terms 'variance' and 'departure' describe two distinct sentencing options available to a sentencing court," and described the differences between the two sentencing options.  Id. at 100 n.6.

> (c) The court <u>shall then consider the applicable factors in 18 U.S.C. § 3553(a)</u> taken as a whole. See 18 U.S.C. § 3553(a).

U.S.S.G. § 1B1.1 (Nov. 1, 2012) (emphasis added) (hereafter "§ 1B1.1").

The Court, of course, is bound by the General Application Principles and the Application Notes in interpreting the Guidelines. United States v. Price, 711 F.3d 455, 458 (4th Cir. 2013) (citing United States v. Hudson, 272 F.3d 260, 263 (4th Cir. 2001); United States v. Banks, 130 F.3d 621, 624 (4th Cir. 1997)). That is so because even after the Guidelines were held to be advisory,[3] they "continue to play an important role in the sentencing process." United States v. Dean, 604 F.3d 169, 173 (4th Cir. 2010).[4]

Further, it is settled that "[t]he Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking," and thus, "the guidelines are the equivalent of legislative rules adopted by federal agencies." Stinson v. United States, 508 U.S. 36, 44-45

---

[3] United States v. Booker, 543 U.S. 220, 234 (2005).

[4] In Kimbrough v. United States, 552 U.S. 85, 101 (2007) (relying on Gall), the Supreme Court directed that a sentencing court must "give respectful consideration to the Guidelines," as required by 18 U.S.C. § 3553. See also Pepper v. United States, ___ U.S. ___, 131 S. Ct. 1229, 1247 (2011) ("Accordingly, we have instructed that district courts must still give 'respectful consideration' to the now-advisory Guidelines (and their accompanying policy statements).").

(1993).  And, as this Court has put it: "[t]he [Sentencing] Commission's interpretive commentary is 'akin to an agency's interpretation of its own legislative rules,'" and "is therefore entitled to substantial deference."  United States v. Mason, 284 F.3d 555, 559 (4th Cir. 2002) (citations omitted).  "As a result, Guidelines commentary that 'interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'"  Id. (quoting Stinson, 508 U.S. at 38, 113 S. Ct. at 1915).  In United States v. Hood, 628 F.3d 669 (4th Cir. 2010), well after Booker made the Guidelines advisory, the Court, in deciding the meaning of crime of violence, recognized the continuing force of Stinson.[5]

The amendment that is reflected in § 1B1.1 was implemented to help secure consistency in the application of the Guidelines after they were made advisory by Booker.  As the majority opinion explains, Diosdado-Star did not mention Irizarry or § 1B1.1 which took effect on November 1, 2010, almost three months before Diosdado-Star was issued and slightly more than a month before arguments were heard.  Also, the briefs in Diosdado-Star

---

[5] In Hood, the Court observed that "[t]he Supreme Court has long held that 'commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" Id. at 672.

25

were filed before the amendment took effect, and they do not mention the amendment.

The Reason for Amendment section accompanying the amendment to § 1B1.1 points out that, after Booker, most circuits, including this one, used the three-step approach specified in the amendment and, indeed, cites United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006), as support for that approach. The same section articulated that "[a] 'variance' - i.e., a sentence outside the guideline range other than as provided for in the Guidelines Manual [a departure] - is considered by the court only after departures have been considered."  Amendment 741 (Effective Date: Nov. 1, 2010; 2011 WL 5984683, at *1113 (emphasis added).

Hence, the sentencing catechism in effect at the time of appellate consideration recognizes that there are significant differences between "departures" and "variances," and requires that, before varying, a court must first consider whether a departure sentence is in order.  And, that logically means that an adequate explanation of a non-Guideline sentence should state whether the deviation from the Guidelines is by way of departure or by way of variance.  And, where, as here, there is an available ground of departure identified in the PSR, the district court would have to address (and accept or reject) that ground before imposing a variance sentence.

26

Thus, on appeal, the Court is confronted with Guideline provisions that are at squarely odds with a published opinion issued by the panel of this Court in Diosdado-Star. At the same time, Henderson necessitates application of the law in effect at the time of appellate consideration. If, as I understand to be the rule, deference is owed to § 1B1.1, a regulation that has the force of law, it would appear that this panel could not follow Diosdado-Star to apply the law in effect at the time of appellate consideration.

However, under the principle of interpanel accord, "customarily a panel considers itself bound by the prior decision of another panel, absent an in banc overruling or a superseding contrary decision of the Supreme Court." Busby v. Crown Supply, Inc., 896 F.2d 833, 840-41 (4th Cir. 1990); see also Mentavlos v. Anderson, 249 F.3d 301, 312 n.4 (4th Cir. 2011) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.").

The principle of interpanel accord, however, is not inflexible. For example, in Derflinger v. Ford Motor Co., 866 F.2d 107, 110 (4th Cir. 1989), the Court applied the principle of interpanel accord, but noted that a previous panel decision

27

would not be followed where there was a subsequent statutory amendment (there a subsequent change in an applicable state statute in a diversity case) that makes the previous decision wrong. In United States Dep't of Health & Human Servs. v. Fed. Labor Regulations Auth., 983 F.2d 578, 581-82 (4th Cir. 1992), the Court explained that "[a] decision by a panel of this court, or by the court sitting en banc does not bind subsequent panels if the decision rests on authority that subsequently becomes untenable." Id. (citing Busby, 896 F.2d at 840-41, and Faust v. South Carolina State Highway Dep't, 721 F.2d 934, 940 (4th Cir. 1983)).

There are no decisions in this circuit that involve application of the interpanel accord principle to facts quite like those presented here in which the change in law occurred before the prior panel decision, but was not mentioned in the panel opinion apparently because of the temporal relationship between the change, the briefing, and the panel opinion. However, in Moody Nat'l Bank v. GE Life & Annuity Assurance Co., 383 F.3d 249, 252 (5th Cir. 2004), the Fifth Circuit faced an issue quite similar to the one presented here.

In Moody Nat'l Bank, the statutory amendment went into effect approximately two months before the release of the prior panel decision and after oral argument and briefing in that case. After explaining the circuit's settled adherence to the

28

rule of interpanel accord, the Fifth Circuit explained that the rule that a panel is "bound to follow the prior panel rulings of this court . . . is inapplicable, however, where Congress makes a change in statutory law that directly affects a prior panel opinion." Id. Observing that "it is clear that [the prior panel] did not consider the amendments . . . or the relevant comments thereto in reaching its decision," id. at 253 n.5, the Fifth Circuit decided the case in perspective of the recent amendment. That approach, of course, is consistent with the comments in Derflinger and with the "subsequently becomes untenable" rationale in Fed. Labor Regulations.

Of course, the decisions in Derflinger and Fed. Labor Regulations must be viewed in perspective of the fact that the Court, sitting en banc, has expressed a clear preference for adherence to the rule of interpanel accord absent an intervening opinion from this Court sitting en banc or the Supreme Court. McMellon v. United States, 387 F.3d 329 (4th Cir. 2004). However, McMellon did not present the rather unusual circumstances that are present here, circumstances that involve the kind of approach that district courts must take respecting the every-day judicial task of sentencing. Nor, at the time of McMellon, had Henderson been decided requiring that plain error be judged at the time of appellate consideration.

29

Nonetheless, as explained in United States v. White, 670 F.3d 419, 516 (4th Cir. 2012), it is the duty of the subsequent panel to find an appropriate way to harmonize resolution of a conflicting issue with a prior panel decision on that issue if it is possible to do so. Unfortunately, it is not really possible to harmonize the decision in Diosdado-Star with § 1B1.1.

Considering that the Supreme Court and this Court's decisions, for example in Price and Hood, require substantial deference to the Guidelines, and taking into account that there is no Constitutional or other infirmity here that would foreclose such deference, I would conclude that the sentencing approach articulated in Diosdado-Star is no longer tenable and that it was error not to proceed as § 1B1.1 requires.

The error was plain, if measured at the time of appellate consideration, even considering the unsettled circumstance created by the conflict between § 1B1.1 and Diosdado-Star because § 1B1.1 must be given substantial deference. United States v. Henderson, ___ U.S. ___, 113 S. Ct. 1130. District judges, and most litigants, likely would prefer the less-structured, and quite sensible, approach reflected in Diosdado-Star. But, as long as the Guidelines continue to be a part of the approach to federal sentencing, and as long as they have the force of law to which substantial deference is owed, it seems to

30

me that § 1B1.1 must be applied as the law at the time of appellate consideration. For the foregoing reasons, I would conclude that the error, measured at the time of appellate consideration, is plain.

However, Whitley does not satisfy the Olano test because his substantial rights were not prejudiced by the approach taken by the district court. That is so because talismanic recitations of sentencing vernacular are never necessary and a sentence is adequately explained if the Court can determine from the record what occurred at sentencing. United States v. Allmendinger, 706 F.3d 330, 343 (4th Cir. 2013); United States v. Carter, 564 F.3d 325, 328-30 (4th Cir. 2009). As the majority opinion makes clear, the record shows that the non-Guideline sentence imposed here was a variance, not a departure; and, as the majority concludes, the sentence imposed was adequately explained and is readily amenable to appellate review.

Relying on a finding of waiver, the majority finds it unnecessary to address the conflict between Diosdado-Star and § 1B1.1 because Whitley did not raise § 1B1.1 in his brief or at oral argument and, in fact, purported, in his brief, to rely on Diosdado-Star. Both of those points are correct, but, I respectfully suggest that they do not warrant by-passing the issue. As I understand it, "[w]hen an issue or claim is

31

properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 99 (1991) (rejecting contention that petitioner waived argument by failing to raise it until reply brief)(citing Arcadia v. Ohio Power Co., 498 U.S. 73, 77 (1990)). Further, an appellate court may consider an argument "'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 445-46 (1993). It seems to me that, in substance, Whitley's argument invokes the principles reflected in § 1B1.1. And, it is the substance of an argument that presents the issue even if the party making the argument fails to cite the best authority in support of it. Hence, I would conclude that Whitley's argument presents the issue that is the conflict between § 1B1.1 and Diosdado-Star, even though he has not cited § 1B1.1 and even though his brief pays lip service to Diosdado-Star.